MARY R. KERNOR AND WILLIAM E. KERNOR, HER HUSBAND, PLAINTIFFS-APPELLANTS, v. NEW JERSEY BELL TELEPHONE COMPANY, DEFENDANT-RESPONDENT.

Argued September 11 and 12, 1972—Decided October 10, 1972.

*Mr. Thomas M. Guiney* argued the cause for appellants (*Mr. Louis Ruprecht,* on the brief; *Messrs. DeYoe, DeYoe & Guiney,* attorneys).

*Mr. Charles A. Sweeney* argued the cause for respondent.

The opinion of the Court was delivered by

SULLIVAN, P. J. A. D., Temporarily Assigned. Plaintiff Mary R. Kernor sued for serious injuries she received in a fall on a public sidewalk on Richards Avenue in Dover, N. J. The sidewalk abutted a parking lot used and maintained by defendant New Jersey Bell Telephone Co., Inc. (Bell). Following a jury trial plaintiff, and her husband suing *per quod* were awarded damages totalling $58,267 and costs against Bell. On appeal, the Appellate Division in an unreported opinion held that Bell's motions for dismissal, made during trial and following the jury verdict, should have been granted in that plaintiffs had failed to prove a *prima facie* case of liability. The judgment in favor of plaintiffs was reversed and the matter remanded for entry of judgment in favor of defendant. We granted certification. 60 *N. J.* 195 (1972).

For reasons hereinafter stated we conclude that a *prima facie* case of liability as to Bell was presented, and that the judgment in favor of plaintiffs should be reinstated.

The sidewalk in question runs along the northerly side of Richards Avenue on municipally owned land, being a part of the public right of way. It was installed by the then abutting property owner Capo at the direction of the Town of Dover some 18 years prior to plaintiff's accident. The paved sidewalk is seven and one-half feet in width and extends to the curbline of Richards Avenue.

The Capo property, located on the northwest corner of Essex Street and Richards Avenue, had a two-family house on it with a garage in the rear. Access to the garage was from Richards Avenue so that when the sidewalk in question was installed a driveway cut or apron was built into the sidewalk. The sidewalk is seven inches higher than the street level, and the driveway cut, some 12 feet wide with a slope of 2-1/4 inches per foot, extends 2 feet 10 inches from the street into the sidewalk at which point it reaches the sidewalk level.

Capo sold the property in 1962 and it eventually came into the ownership of David Green and Albert A. Cuneo.

Bell leased the property in July 1963 and proceeded to demolish the house and garage thereon in order to use the land as a parking lot for its adjacent business office.[1] After the lot was cleared it was paved with blacktop and a new driveway opening into Essex Street was constructed. The old (Capo) driveway was closed off by the placing of wheel stops along the Richards Avenue side of the parking lot some two feet back from the sidewalk. However, the original driveway cut in the sidewalk was left in its existing condition.

In connection with the construction of the new entrance on Essex Street, two parking meters on that street were removed. At about the same time a parking space was marked off on Richards Avenue in front of the old driveway entrance and a new parking meter was installed in a corner of the old driveway cut about 23 inches in from the curb. The new meter became part of a line of parking meters along that side of the street.

On November 21, 1965, Mrs. Kernor, on her way to church with her husband and three children, was walking along the sidewalk on the northerly side of Richards Avenue. The family was proceeding in an easterly direction. Mrs. Kernor, who was walking with her daughter, was on the right closest to the curb. Just as she passed the parking meter installed in the corner of the old driveway cut her right foot went into the depression and she fell.

At the trial, Mrs. Kernor testified that she did not see the depression prior to her fall and did not know it was there. She was aware of the row of parking meters along the street as well as the Bell parking lot which was full of cars. She did not remember if there was a car parked on Richards Avenue adjacent to where she fell.

---

[1] The lease was for a term of four years and five months with options to renew for an additional five years. Paragraph "Ninth" thereof required Bell "to maintain * * * the sidewalks and approaches appurtenant thereto in a good safe proper order and condition" during the term of the lease.

Suit was commenced against Greene and Cuneo the owners, Bell the tenant, and the Town of Dover. (Two other defendants were originally joined but were let out by stipulation in November, 1967.) Prior to trial the Town of Dover settled with plaintiffs. During trial and with plaintiffs' consent, the case was dismissed with prejudice as to Greene and Cuneo, leaving Bell as the sole remaining defendant. The jury returned a verdict against Bell and in favor of Mrs. Kernor for $41,500, and Mr. Kernor for $16,767. By answer to special interrogatory the jury found that the Town of Dover was also guilty of negligence which was a proximate cause of the accident.

In reversing the judgment against Bell, the Appellate Division held that negligence could not be inferred from the mere closing off of a driveway no longer in use, and that the establishment of a parking lot separated by wheel stops from the driveway did not unreasonably add to the claimed hazard posed by the driveway.

The Appellate Division also concluded that the marking off by the Town of a parking space opposite the driveway would not support a finding of negligence on Bell's part, and that the location of the parking meter in the driveway cut, whether the work was done by the Town, or Bell under the Town's direction, (plaintiffs claimed that Bell made the actual installation), was a matter of governmental discretion attributable to the Town only.

It is undisputed that the establishment of a driveway cut or apron in a sidewalk necessarily creates some hazard for pedestrians using the sidewalk. However, cases recognize the utility and need of a driveway and have sanctioned its construction over a sidewalk by an abutting property owner so long as it does not unreasonably interfere with the public use. 10 *McQuillin, Municipal Corporations* (3d ed. rev. vol. 1966), § 30.64, p. 784; 39 *Am. Jur.* 2d, *Highways, Streets and Bridges,* § 181 (1968); *cf. Den Braven v. Public Service Electric & Gas Co.,* 115 *N. J. L.* 543, 544–545 (E. & A.

1935). A properly constructed driveway cut in a sidewalk is given legal status because of its social utility.

On this appeal plaintiffs do not contend that the driveway cut, as originally installed, was improperly constructed. Nor does their claim of liability rest solely on the fact of an abandoned driveway. Rather they contend that Bell, in addition to discontinuing the use of the driveway cut, by other affirmative acts made the existing hazard therein more dangerous than before.

The legal principle on which plaintiffs rely is basic. An abutting property owner (or tenant) is liable for his acts which either create a sidewalk hazard, or cause an existing hazard to become more dangerous. *McKeown v. King,* 99 *N. J. L.* 251 (E. & A. 1923); *Prange v. McLaughlin,* 115 *N. J. L.* 116 (E. & A. 1935); *Snidman v. Dorfman,* 7 *N. J. Super.* 207 (App. Div. 1950); *Wirth v. Peters,* 36 *N. J. Super.* 172 (App. Div. 1955). See *Krug v. Wanner,* 28 *N. J.* 174 (1958).

We conclude that plaintiffs' proofs were adequate to present a factual issue as to the applicability of this principle.

Prior to the acts hereinafter detailed, the driveway cut in the sidewalk led to a garage in the rear of the premises so that the existence of the cut must be presumed to have been fairly obvious. Bell caused the house and garage to be torn down. The lot was then graded and paved. Access to the lot was over a new driveway cut on Essex Street. The old driveway was closed off by placing a line of wheel stops along the Richards Avenue side of the lot. Bell's engineers, who designed the parking lot, were aware of the old driveway cut in the sidewalk on Richards Avenue but took no steps to eliminate it. However, the plan did call for a new sidewalk on Essex Street. A parking meter was installed at a corner of the old driveway cut on Richards Avenue.

From the foregoing we conclude that a jury could have reasonably found that Bell by its affirmative acts created or enhanced the illusion that there was no driveway cut and

thus the sidewalk was level, so that a casual pedestrian could have been misled into a false sense of security. On such a finding that Bell had actually made the sidewalk "more dangerous than before," *Snidman v. Dorfman, supra,* 7 *N. J. Super.* at 211, liability would exist under the basic principle heretofore mentioned. Within the framework of this appeal we find it unnecessary to decide whether the termination or abandonment of a driveway use, without more, imposes a legal obligation on the abutting owner (or lessee) to level off the sidewalk by filling in the driveway cut.

The judgment of the Appellate Division is reversed and the judgment of the trial court reinstated.

*For reversal*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL and MOUNTAIN and Judges CONFORD and SULLIVAN—7.

*For affirmance*—None.