479 S.E.2d 911

Kevin LOUK, Administrator of the Estate
of Deborah L. Louk, Plaintiff Below,
Appellant,

v.

ISUZU MOTORS, INC., a California
Corporation; General Motors Corpora-
tion, a Delaware Corporation, Harry
Green Chevrolet, Inc., a West Virginia
Corporation, Wal–Mart Stores, Inc., a
Delaware Corporation, and William S.
Ritchie, Commissioner, and/or West
Virginia Department of Highways, De-
fendants Below, Appellees.

Vicki LOUK, Plaintiff Below,

v.

WAL–MART STORES, INC., a Delaware
Corporation; Fred Van Kirk, Commis-
sioner; and/or West Virginia Depart-
ment of Highways, Defendants Below.

No. 23051.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 25, 1996.

Decided Dec. 6, 1996.

Paul J. Harris, Harris & Bush, Elkins, for Appellant.

Thomas H. Vanderford, IV, Pauley, Curry, Sturgeon & Vanderford, Charleston, for Appellee, Wal–Mart Stores, Inc.

J. Benjamin Unkle, Jr., Piper & Marbury, Baltimore, MD, for Appellees, Isuzu Motors, Inc., General Motors Corporation, and Harry Green Chevrolet, Inc.

Fred Adkins, Lisa A. Green, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for Gray Engineering.

Jill M. Jerabek, Tammy R. Harvey, Cynthia Majestro, Charleston, for Appellee, West Virginia Department of Highways.

ALBRIGHT, Justice:

Appellant, Kevin Louk, plaintiff below, appeals [1] the January 30, 1995 final order of the Circuit Court of Randolph County, West Virginia, which denied his request, after adverse verdicts, for judgment notwithstanding the verdict or, in the alternative, a new trial. Appellant contends that the trial court erred in granting summary judgment to the Division of Highways and its Commissioner on the basis of governmental immunity and in granting a directed verdict in favor of Wal–Mart Stores, Inc. (Wal–Mart) and Gray Engineering Consultants, Inc. (Gray Engineering). We affirm the court's ruling as to the Division of Highways and its Commissioner (DOH) [2] and reverse the directed verdict granted in favor of Wal–Mart and Gray Engineering.

## FACTS

Prior to the collision giving rise to this case, appellee Wal–Mart undertook the construction of a retail business premises near Elkins, West Virginia, abutting U.S. Route 219/250, a State highway. Wal–Mart's busi-

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15,1996, and continuing until further order of this Court.

2. Since no claim of personal liability appears to have been made against the Commissioner, we will ordinarily refer only to the Division of Highways (DOH) in the body of this opinion.

ness premises there included a store building, parking lot, and means of access to Route 219/250. In order to provide the means of access to the State highway to and from its business location at Elkins, Wal–Mart was required to obtain an encroachment permit from the DOH. Gray Engineering was retained by Wal–Mart to design the access plan and prepare and submit the permit application. Upon completion of the application, along with the proposed design of the access, and after consultation with the in-house engineering department of Wal–Mart, Gray Engineering submitted the application to the DOH at its office in Elkins. Tom Staud, District Engineer for that DOH office, found that the permit application complied with State law and State requirements and, therefore, gave his initial approval. The papers were then forwarded to the central DOH office in Charleston, to be reviewed by the traffic, design, maintenance, and right-of-way departments. The DOH approved the encroachment permit as submitted by Wal–Mart and Gray Engineering. It appears that the Wal–Mart access to Route 219/250 was then constructed in accord with the Gray Engineering plan.

On June 13, 1992, Deborah Louk and Vicki Louk drove from Beverly, in Randolph County, West Virginia, to shop at a Wal–Mart store located on Route 219/250, south of Elkins, West Virginia. After completing their business at the Wal–Mart store, the Louks, in a motor vehicle being driven by Deborah Louk, exited the parking lot by means of the Wal–Mart access and, attempting a left-hand turn toward Beverly, entered onto Route 219/250. In doing so, the Louk vehicle was driven into the path of an oncoming vehicle. In the resulting collision, Deborah Louk was killed.[3]

Appellant, Kevin Louk, Deborah Louk's husband, is the administrator of Deborah Louk's estate. He initiated this action against Isuzu Motors, Inc., General Motors Corp., Harry Green Chevrolet, Inc., Wal–Mart Stores, Inc., William S. Ritchie, Com-

missioner of the West Virginia Department of Highways (Commissioner), and the West Virginia Department of Highways. Wal–Mart had employed Gray Engineering to design the access from the Wal–Mart store onto U.S. Route 219/250. In turn, Wal–Mart named Gray Engineering as a third-party defendant, and Gray Engineering countersued Wal–Mart. Appellant subsequently amended his complaint to name Gray Engineering as a party defendant to his cause of action. The action sought compensatory and punitive damages by reason of the death of Deborah Louk in the collision against the DOH and Wal–Mart, against Gray Engineering with respect to the design and use of the Wal–Mart access to Route 219/250, and against General Motors, Isuzu, and Harry Green Chevrolet with regard to the crashworthiness of the vehicle which Deborah Louk was driving at the time of her death.

The DOH filed a motion to dismiss, stating that the trial court lacked jurisdiction over the subject matter. Because the motion included materials outside the pleadings, the court treated the motion as one for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, and it was granted in April, 1994, on the basis that the DOH, as an agency of State government, was immune from suit and was not covered by insurance under which an action might be maintained notwithstanding such immunity. The case proceeded to trial against the remaining defendants. At the close of appellant's case-in-chief, the remaining defendants moved for a directed verdict pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure. The court directed a verdict in favor of Wal–Mart and Gray Engineering but refused to direct a verdict in favor of the crashworthiness defendants, General Motors, Isuzu, and Harry Green Chevrolet, except as to punitive damages. On November 2, 1994, after the conclusion of the presentation of evidence by the crashworthiness defendants, the jury returned a verdict in their favor.

Appellant timely filed a motion for judgment notwithstanding the verdict or, in the

---

**3.** Vicki Louk was a passenger in the vehicle driven by Deborah Louk at the time of the colli-

sion and was also a plaintiff below. She reached a settlement with the defendants prior to trial.

alternative, a motion for a new trial. The court denied the motion on January 30, 1995, and appellant appeals.[4] Appellant claims the lower court erred in granting summary judgment in favor of the DOH on the basis of governmental immunity and erred in directing a verdict for Wal–Mart and Gray Engineering.

## STANDARD FOR REVIEW

"A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

"The appellate standard of review for the granting of a motion for a directed verdict pursuant to Rule 50 of the West Virginia rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to non-movant party, will sustain the granting of directed verdict when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed." Syllabus point 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996).

## SUMMARY JUDGMENT FOR THE DIVISION HIGHWAYS

Appellant claims that the Division of Highways, a State entity, is not protected by sovereign immunity when the wrong complained of is covered by liability insurance and that the actions of the DOH which he pled and desired to prove are covered by the

State's insurance policy. Appellant contends that the DOH was negligent in approving the site plan and in not reviewing the plan, as is required by the DOH regulations. He also contends that this resulted in the approval by the DOH of a negligently designed means of access to the highway.

The DOH is an instrumentality of the State.[5] Recently, in *Parkulo v. W.Va. Board of Probation and Parole*, No. 23366, —— W.Va. ——, —— S.E.2d —— [1996 WL 663338] (W.Va. Nov. 15,1996), we reaffirmed that instrumentalities of the State are entitled to claim the sovereign immunity granted by Article VI, § 35 of the State Constitution. We also discussed there, in some detail, the scope and effect of suits brought under insurance policies purchased by the State to cover its "property, activities and responsibilities" under the provisions of W.Va.Code § 29–12–5. In accord with *Parkulo*, we conclude that appellant's cause of action against the DOH would be absolutely barred but for the provisions of W.Va.Code § 29–12–5, and that any action not barred could only have been maintained under and up to the limits of the State's liability insurance coverage. *See* syllabus point 2, *Pittsburgh Elevator v. West Virginia Board of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983). In syllabus point 5 of *Parkulo*, we said:

If the terms of the applicable insurance coverage and contractual exceptions thereto acquired under W.Va.Code § 29–12–5 *expressly* grant the State greater or lesser immunities or defenses than those found in the case law, the insurance contract should be applied according to its terms and the parties to any suit should have the benefit of the terms of the insurance contract.

The record before us suggests that the State of West Virginia had a policy of insurance in effect at the time relevant to this action, providing its instrumentalities

---

4.  Although appellant appeals from denial of the motion for judgment notwithstanding the verdict or, alternatively, for a new trial, no error is assigned regarding the defendants involved in this motion, GMC, Isuzu, and Harry Green Chevrolet.

5.  *See* W.Va.Code § 5F–1–2(a)(7) (1992), W.Va. Code § 17–2A–1 (1996), and W.Va.Code § 5F–2–1(g)(2) (1995).

"Wrongful Act Liability Insurance". The policy defined "wrongful act" as follows:

"Wrongful act" shall mean any actual or alleged error or misstatement or act or omission or neglect or breach of duty including malfeasance[,] misfeasance, and non-feasance by the insureds in the discharge of their duties with the "named insured," individually or collectively, or any matter claimed against them solely by reason of their being or having been insured.

Appellant contends that the policy provided coverage with respect to alleged wrongful acts of the DOH. Appellant specifies as wrongful acts in this action the failure to properly administer the laws of the State of West Virginia, failure to administer the policies and procedures adopted by the West Virginia Division of Highways, and failure to properly implement the procedures set forth in the Manual of the Uniform Traffic Control Devices. Appellant asserts that, in approving Wal–Mart's permit, the DOH had a ministerial duty to the public to prudently review the access permit and advise Wal–Mart and Gray Engineering on appropriate precautionary measures to ensure the safe movement of traffic into and out of the Wal–Mart parking lot. Appellant claims that failure to so advise Wal–Mart and Gray Engineering under the laws of West Virginia and the regulations of the DOH constitutes a breach of that duty, which is a "wrongful act."

The DOH responds, and the record before us confirms, that the applicable insurance policy also contained an endorsement, Endorsement No. 10, which provided:

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

I  Comprehensive General Liability Insurance

II  Professional Liability Insurance

III  Personal Injury Liability Insurance

IV  Stop Gap Liability Insurance

V  Wrongful Act Liability Insurance [6]

It is agreed that the insurance afforded under this policy does not apply to the: "Ownership, design, maintenance, supervision, operation, use or control of streets, including sidewalks, highways or other public thoroughfares, bridges, tunnels, dams, culverts, storm or sanitary sewers, but this exclusion does not apply to bodily injury or property damage which arises out of and occurs during the performance of construction, street cleaning and repair operations or arises out of the maintenance or use of sidewalks which abut buildings covered by this policy."

■ As we understand the record, it is undisputed that there was no ongoing construction, maintenance, or repair underway on Route 219/250 at the scene of the collision giving rise to this action. " 'Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syllabus point 1, *Russell v. State Automobile Mutual Insurance Company*, 188 W.Va. 81, 422 S.E.2d 803 (1992). There is no ambiguity here; the endorsement modifies all five coverages, including the wrongful act coverage. Since there was no construction, maintenance, or repair work underway at the time and place of the collision, the policy provides no coverage against the alleged wrongful acts of the DOH. *Shrader v. Holland,* 186 W.Va. 687, 414 S.E.2d 448 (1992). Accordingly, the circuit court correctly dismissed the Commissioner and the Division of Highways from this action with prejudice.[7]

## WAL–MART AND GRAY ENGINEERING

As we understand the gravamen of appellant's complaint, it is that Gray Engineering

**6.** Continental Casualty Company Policy No. GL 607415934.

**7.** *See also* W.Va.Code § 17–4–37 (1933), which statutorily confirms the immunity of the Division of Highways from suit in the circumstances of this action.

negligently designed an unsafe means of access to and from the Wal–Mart parking lot, that Wal–Mart concurred with the plan and then caused the access to be constructed, after the plans for such access were negligently reviewed and approved by the DOH. Moreover, the complaint is that, once the access was constructed, Wal–Mart knew or should have known that it was unsafe and negligently failed to even attempt to have it corrected. Appellant contends that as a proximate result of the negligence of Gray Engineering, Wal–Mart and DOH, Deborah Louk, a business invitee of Wal–Mart, came onto the Wal–Mart access and, by reason of its unsafe character, met death. Appellant argues that he established a *prima facie* case and that the evidence, viewed in a light most favorable to him, would permit the jury to find in his favor.

Gray Engineering asserts that it owed no duty to Ms. Louk and, in any event, fulfilled its duty by designing an access plan that met state requirements. They argue further that nothing Gray did or did not due caused the Louk collision. Wal–Mart asserts that nothing it did or did not do was a proximate cause of the Louk collision and, particularly, that it had no duty to revise the access or cause the access to be revised because the DOH approved the plan for it and controlled its subsequent maintenance. It appears that both of these defendants assert that if the access was in any way unsafe, the DOH approval was the proximate cause of any resulting injury, either as the sole responsible party or because the DOH approval is an intervening cause or because Ms. Louk's negligence was the sole proximate cause of the collision. Next, the DOH has successfully asserted its immunity to suit, as determined above. Finally, the defendants rely on the finding of the trial court below that Ms. Louk's own negligence was "without question" the proximate cause of the collision. We proceed to analyze the issues presented by these conflicting assertions.

### Did Gray Engineering Owe A Duty To Wal–Mart's Invitees?

Here, on the issue of any duty owed by Gray Engineering to Ms. Louk, Gray Engi-neering simply asserts that it had no duty beyond designing a plan acceptable to the DOH, citing *Atkinson v. Harman,* 151 W.Va. 1025, 158 S.E.2d 169 (1967). We do not find *Atkinson* helpful, because it appears that the Court turned that case on a finding that the person injured was a mere licensee, to whom the defendant owed only the duty "to not deliberately or wilfully injure him." 151 W.Va. at 1031, 158 S.E.2d at 174. In the case before us, Ms. Louk was a business invitee.

■ We have carefully reviewed the arguments and ruling of the court below relating to the directed verdicts at issue here. There, in advancing its argument that it had no duty to Ms. Louk, Gray Engineering relied heavily on the principle enunciated in *Roush v. Johnson,* 139 W.Va. 607, 80 S.E.2d 857 (1954), that an independent contractor is not liable for injuries occurring to a third person after the contractor has completed the work and turned it over to the owner or employer and the work has been accepted by the owner or employer. It appears that the core of the Gray Engineering argument regarding its duty, if any, to Ms. Louk flows from its assertion of the general rule stated in *Roush.* The *Roush* Court recognized and adopted exceptions to the general rule, as follows:

> [A]n independent contractor is liable for injuries sustained by, or the death of, a third person, after the work contracted to be performed has been completed, turned over to the contractee, and accepted by him, where the work performed and turned over is inherently and intrinsically dangerous, that is, so defective by reason of the independent contractor's negligence, as to be imminently dangerous to a third person, or where the independent contractor has full knowledge of the defects in the work performed by him, which renders the completed work dangerous to the owner or his invitee, and wilfully conceals the same, or where the dangerous condition of the work caused by the independent contractor's negligence was not known to the contractee, and the defect was so concealed that the contractee would not have discovered it by reasonable inspection.

*Id.* at syllabus point 7.

Aside from its assertions regarding the DOH which we will later discuss in this

opinion, and the proximate cause and contributory negligent arguments, we perceive the thrust of the Gray Engineering argument to be that its plan did not create an inherently and intrinsically dangerous condition or otherwise create any of the exceptions approved in *Roush* to the general rule of non-liability of independent contractors.

■ We recognize that the general rule upon which Gray Engineering relied has its genesis in the ancient rule of privity, in essence, that a tort action based on the faulty performance of a contract may only be maintained by a party to that contract or the one for whose direct benefit it was made. First, we note that this Court has abolished privity as a defense where the theory of the case is a negligent breach of warranty, express or implied. *See Dawson v. Canteen Corporation,* 158 W.Va. 516, 212 S.E.2d 82 (1975). In *Dawson,* this Court said: "It is sufficient merely to hold that lack of privity alone is no longer a defense to a [breach of] warranty action in West Virginia." *Id.* at 520, 212 S.E.2d at 84. Although that holding was clearly influenced by the passage of legislation disregarding privity in the commercial and consumer protection areas,[8] the Court also discussed its decision as being in line with "the clear trend of the common law" and the need to provide "functional rather than arbitrary rules for recovery in warranty." *Id.*

■ This Court addressed privity again in an action which bears some resemblance to the situation of the parties in the case before us. In *Sewell v. Gregory,* 179 W.Va. 585, 371 S.E.2d 82 (1988), the plaintiffs were the second owners of a home built some four years earlier by the defendant and then sold to the original owners. Shortly after acquiring the home, the plaintiffs experienced serious flooding of their home and ultimately brought suit against the builder of the home with whom they had no contractual relationship whatever. Nothing in the reported facts of the case indicates that the construction deficiencies claimed to have caused the

flooding created inherently or intrinsically dangerous conditions. We described the plaintiffs' action in *Sewell* as being for breach or implied warranties of habitability and fitness and reiterated the holding of *Dawson* that privity was abolished in such actions. With respect to whether the duty to properly construct the home at issue was owed to subsequent purchasers, the Court pointed out that a builder must, of necessity, foresee that there will likely be owners of a home subsequent to the first to occupy it. We said, in syllabus point 2 of *Sewell:* "In the matters of negligence, liability attaches to a wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty which results in an injury to others." And, in syllabus point 3 of *Sewell,* we stated further: "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" This Court found that the harm visited upon the plaintiffs was reasonably foreseeable. As to the time in which such actions might be brought, we said that in actions against builders of new homes by subsequent owners, it should be shown that the harm had been discovered by the subsequent owners within "a reasonable length of time" of the original construction of the home. *Id.* at 589, 371 S.E.2d at 86.

Before our abolition of privity in warranty cases, it was noted by the United States District Court for the Southern District of West Virginia in *Shanklin v. Allis–Chalmers Mfg. Co.,* 254 F.Supp. 223 (S.D.W.Va.1966), *aff'd,* 383 F.2d 819 (4th Cir.1967), that this Court had not spoken definitively on the question of privity in an action involving an instrumentality that is not inherently or imminently dangerous, but that it anticipated that this Court would adopt the modern view that privity is not a requirement for such an action. Prompted by appellee Gray's asser-

---

**8.** W.Va.Code § 46–2–318 (1963) and W.Va.Code § 46A–6–108 (1974).

tions and finding that none of our cases do address privity outside the inherently dangerous or warranty contexts, we shall now proceed so to do with regard to the allegedly negligent design of an access to and encroachment on a public highway.

We adopt the principle of *Sewell,* that "[t]he ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised." *Sewell,* 179 W.Va. at 588, 371 S.E.2d at 85, *quoting Coburn v. Lenox Homes,* 173 Conn. 567, 575, 378 A.2d 599, 603 (1977). We believe that principle to be properly applicable to the matter before us. Certainly, one who designs an access road to lead from a business location to a major highway and proposes to encroach on the public way by means of that access must foresee that the invitees of that business will use the access and depend upon its design. Moreover, if that design contemplates that traffic using it will turn both right and left from the access onto the highway, the designer must, of necessity, foresee that plans for such an access must provide such things as adequate lines of sight or vision and a traffic pattern calculated to permit ordinarily prudent drivers time and safe opportunity to accomplish such maneuvers. Lastly, it is not unreasonable to conclude that if the design is inadequate, persons using it may be seriously injured, maimed, or killed as a result of deficiencies in the design which render it unsafe. Such a rule has been applied to hold architects liable for injuries resulting from a negligent design of structures. *See* 5 Am.Jur.2d *Architects* § 25. Also, regarding foreseeability as the ultimate test, *see Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.,* 28 Ohio St.3d 333, 504 N.E.2d 415 (1986).

Having reviewed these principles, we are satisfied that an independent contractor, who claims special skill or knowledge to plan and design an access road and encroachment onto a public highway, and negligently prepares such a plan and design, may be liable to persons injured as a proximate result of such negligence before or after the plan or design has been accepted by the owner or employer of the independent contractor and regardless of privity.

In *Sewell,* this Court limited actions by subsequent homeowners against homebuilders to defective conditions appearing within a "reasonable length of time" after construction. We note that W.Va.Code § 55–2–6a (1983) limits actions for the "planning, design, surveying, observation or supervision of any construction" of improvements to real property to ten years, with certain exceptions. While we leave to another day the further definition of "reasonable length of time" within the context of a *Sewell* type case, we hold that an action for the negligent planning and design of an access road to lead from a business location to a highway, with resulting encroachment on the public way, is subject to the limitation of actions provisions of W.Va.Code § 55–2–6a.

In examining the record before us to ascertain if the evidence, considered in the light most favorable to appellant, made out a *prima facie* case of negligence, we noted the following. At trial, appellant called the party representative of Gray Engineering, William Dennis, as an adverse witness. Mr. Dennis is a civil site engineer who testified that, before designing the access, he did not visit the site, conduct traffic volume studies, determine the status of existing commercial development, determine state law and regulations, or review the Federal Manual on Traffic Control Devices. Dr. Ronald Eck, Gray Engineering's expert, testified that it is not an acceptable engineering practice to design a highway access without a member of the design team visiting the site. He said further that an access should not be designed without conducting traffic volume studies, if none are available. Dr. Eck also testified that it is not an acceptable engineering practice to design an access to a commercial development without having knowledge of state law or regulations and information as to existing commercial development. He testified that he teaches his college students that they should review the federal manual before

they design access ways. Gray Engineering, on the other hand, asserted that it relied on the DOH with respect to some of these matters and functions, as a part of a team which included Wal–Mart personnel and the DOH personnel to guide them in such matters.

Appellant also presented the testimony of Alfred Cipriani, an engineer who works for a corporation that provides engineering services in accident analysis. Mr. Cipriani testified that, in his opinion, the design of the Wal–Mart access was deficient or negligent because no traffic light was installed. He testified that a traffic light should have been installed under several different warrants [9] listed in the Manual for Uniform Traffic Control Devices. These warrants include the minimum vehicular volume, interruption of continuous traffic, accident experience,[10] the four-hour volume of traffic, and the peak-hour volume of traffic. Any one of these would warrant the installation of a traffic light. Mr. Cipriani opined that Wal–Mart and Gray Engineering were negligent and that this negligence was a factor causing or contributing to the death of Deborah Louk.[11] There was also a suggestion in the evidence that an acceleration/deceleration lane should have been included in the plan.

We believe that a jury could reasonably conclude that Gray Engineering negligently planned and designed the access to Route 219/250 at issue in this case and that, if it finds such negligence to be a proximate cause of the Louk collision, assess damages therefor. We believe that the evidence adduced at the trial below would also fairly support a jury conclusion that Gray Engineering was aware of the purpose of the access—to serve Wal–Mart's business invi-tees coming to and leaving the parking area provided in conjunction with the Wal–Mart store—and that the negligently planned and designed access would result in such business invitees being harmed because of it. It may be that a jury would relieve Gray Engineering of responsibility with respect to the plan and design of the Wal–Mart access or perhaps assess a part or all of the fault to the DOH for failing in its responsibilities. However, we believe that the assertion that the DOH permit approval process absolves Gray Engineering of responsibility, as a matter of law, misses the point of Gray's own initial responsibility to plan and design and recommend to Wal–Mart (and the DOH) an access design that does not have in it the alleged potential to harm users of the Wal–Mart access, arising, as appellant contends, from Gray Engineering's failure to research, plan, and design a safe access. Accordingly, we conclude that the evidence established *prima facie* a duty owed to Ms. Louk by Gray Engineering and a breach of that duty.

### *DOH negligence as the proximate or intervening cause.*

Gray Engineering argues that it had no obligation to conduct a traffic study, to perform an on-site inspection, or to recommend a traffic light. These obligations, Gray Engineering argues, belong to the Division of Highways. Gray Engineering argues that it could not require that a traffic light to be installed at the intersection of the access and Route 219/250 and was precluded from making any changes or improvements to the State highway without approval from the Division of Highways. As noted above, Gray Engineering's representative testified that,

**9.** As used here, "warrant" refers to traffic engineering terminology for a guideline or criteria that should be examined to determine whether a traffic signal is justified at a particular location.

**10.** Mr. Cipriani testified that the accident history shows that seven accidents occurred at the site within eleven months of the Wal–Mart store opening. However, further review of the record reveals that five of the accidents occurred at the northern entrance/exit, while only two occurred at the southern entrance/exit where Deborah

Louk's accident occurred. Wal–Mart states further that the accident rate at Wal–Mart's entrances/exits was one or less accident per million entering vehicles, and this is consistent with accident rates for all intersections in the State.

**11.** We have some doubt as to whether experts ought be permitted to testify to the ultimate issue of "negligence", but we leave to the trial court the control of such matters in light of the positions asserted before it with regard to such testimony and the context in which it is offered.

before designing the access, he did not visit the site, conduct traffic volume studies, determine the status of existing commercial development, determine state law and regulations, or review the Federal Manual on Traffic Control Devices. As we understand the evidence, Gray Engineering counted on the DOH to do that work as a part of its review of the permit application. Indeed, Gray Engineering's representative testified that in preparing a plan and design for access to a Wal–Mart store, it is his practice to work as part of a team, with Wal–Mart's engineers and the department of transportation in the state where a store is being constructed. In that process, after Wal–Mart approves its plan and design, the plans are submitted to the appropriate state highways office for review and the issuance of permits before the access is constructed.

Mr. Thomas Staud, the District Engineer for the DOH, testified regarding the process involved in granting permits for highway access. He testified that he recommended approval of the geometric design, and the Charleston office gave ultimate approval for the design. Roger Russell, a traffic engineer from the Charleston office of the DOH, testified by videotape deposition that in order for a traffic signal to be installed at a shopping center, the developer must indicate to the DOH that he wants and will pay for a traffic light. Then, the requirements in the Federal Manual on Uniform Traffic Control Devices must be met. Mr. Russell testified he was not aware of Wal–Mart or Gray Engineering requesting installation of a traffic light. Mr. Russell also testified that simply because a developer requests that a traffic light be installed does not mean the light will be put in.[12]

The import of this testimony, from the Wal–Mart and Gray Engineering perspective, is that the DOH controlled the ultimate design and the issue of whether a traffic light could have been installed and that Wal–Mart and Gray Engineering ultimately depend upon the actions of the DOH. Gray Engineering asserts that it meticulously followed the proper procedure in West Virginia to obtain the necessary permit which authorized Wal–Mart's access to Route 219/250. The DOH clearly has the authority to return an application permit for modification prior to the approval of a permit. The evidence shows that the DOH made no suggestion that the access plan and design be modified to include a traffic signal or acceleration and deceleration lanes.

However, we see appellant's case as asserting a claim against joint tortfeasors. As we said, the gravamen of appellant's complaint is that Gray Engineering negligently designed an unsafe means of access to and from the Wal–Mart parking lot, that Wal–Mart concurred with the plan and then caused the access to be constructed, after the plans for such access were negligently reviewed and approved by the DOH. We are mindful of the principle that the breach of a duty owed, by itself, is not actionable, unless there is also sufficient evidence from which the jury may find by a preponderance of the evidence that such negligence is a proximate cause of the injury. "Negligence to constitute the proximate cause of an injury to or the death of another must be such as can reasonably have been anticipated by an ordinarily prudent person." Syllabus 3, *Roush v. Johnson*, 139 W.Va. 607, 80 S.E.2d 857 (1954). We likewise rely on the rules applicable to concurrent negligence, that no one defendant need be the sole cause of the injury sustained if the negligence of two or more parties concurred in time and place and the negligence of each proximately contributed to the resulting harm. Then recovery may be had against all the parties whose negligence proximately contributed to the in-

---

**12.** Mr. Russell specifically testified:
    [A traffic light] may not necessarily be the proper traffic control measure to implement there, and also for the simple reason that a traffic signal can sometimes make a problem worse at a location.

    For instance, a traffic signal has a tendency to alleviate right angle type accidents, but a traffic signal has a tendency to increase the number of rear end accidents.

jury. *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975).

■ We repeat what was said in syllabus point 1 of *Jividen v. Legg,* 161 W.Va. 769, 245 S.E.2d 835 (1978), this Court said:

" 'Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence. Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.,* 112 W.Va. 85, 163 S.E. 767.' " Point 1, Syllabus, *Jenkins v. Chatterton,* 143 W.Va. 250, 100 S.E.2d 808 (1957).

It may be that Gray Engineering and Wal-Mart have a telling point on the issue of proximate cause, particularly in light of the permit procedure required by the DOH and the fact that the actual site of the collision at issue was on Route 219/250. However, after a review of these contentions and the evidence—in the light most favorable to the appellant—we believe that appellant's evidence is sufficient to lay these issues before a jury. A jury might conclude that none of the defendants are culpable. A jury might conclude that Gray and Wal-Mart failed in their duty to design and propose a truly safe means of access on the basis of sound preliminary evidence and investigation. The jury might also conclude that a truly safe means of access required a traffic light and or acceleration or deceleration lanes. The jury might conclude that Gray and Wal-Mart shared responsibility for a resulting unsafe condition and conclude that it was reasonably foreseeable that third persons, Wal-Mart's business invitees, might be injured by reason of such failures. Finally, the jury might conclude that DOH shared responsibility for any unsafe condition or was alone responsible. We think such conclusions are for the jury under proper instruction and not for this Court or the trial court.

■ We also conclude that there is evidence here which would justify an instruction on intervening cause. With regard to both Gray Engineering and Wal-Mart, we note that it may be fairly asserted that the role of the DOH in reviewing and approving the permit constituted an intervening cause, constituting the sole proximate cause, thereby completely absolving Gray and Wal-Mart. In *Puffer v. Hub Cigar Store,* 140 W.Va. 327, 84 S.E.2d 145 (1954), the Court, quoting *Hartley v. Crede,* 140 W.Va. 133, 82 S.E.2d 672 (1954), defined an intervening cause as "a negligent act or omission which constitutes a new effective cause and which, operating independently of anything else, is the proximate cause of an injury." *Puffer,* 140 W.Va. at 341, 84 S.E.2d at 155. We do not find that the evidence is so strong or persuasive from any side that such an issue can be decided as a matter of law. As with the other issues we have discussed, we believe these issues are for a jury, under proper instruction, and not for the court. Because we recognize that reasonable people could draw differing inferences from the evidence, particularly the evidence regarding the level of involvement of the DOH in the planning and design of the Wal-Mart access and the "team" approach to planning and designing the access to which Gray Engineering's representative testified, we conclude that, on retrial, the jury is entitled to consider whether the DOH's role was truly independent and separate or whether the development of the access plan and design was truly a team effort in which all the defendants remaining in this action had a simultaneous and contributing role.

### Wal–Mart's Liability

For its part, Wal–Mart contends that the trial court was correct in granting Wal-Mart's motion for a directed verdict on the basis that appellant had not proved his damages were proximately caused by any negligent act or omission of Wal–Mart. Wal-Mart cites *Mann v. Golub,* 182 W.Va. 523, 389 S.E.2d 734 (1989), for the tenet that the trial court has a mandatory duty to direct a verdict where a plaintiff fails in a negligence action to prove proximate cause.

Before we discuss proximate cause in the context of Wal–Mart's liability, we must con-

sider what duty Wal–Mart owed, not only to Deborah Louk, but to all of its business invitees. The leading business invitee case in West Virginia is *Puffer v. Hub Cigar Store,* 140 W.Va. 327, 84 S.E.2d 145 (1954). In syllabus point 1 of *Puffer,* this Court stated:

An invitation is implied when premises of an owner or an occupant are entered or used for a purpose which is beneficial to the owner or the occupant, or when the entry or the use is for the mutual benefit of the owner or the occupant and the entrant or the user of the premises.

In syllabus point 2 of *Puffer,* the Court defined "invitee" by stating, "[a] person is an invitee when for purposes connected with the business conducted on the premises he enters or uses a place of business." For the purposes of this case, we note that the premises at issue include not only the store building in which Wal–Mart conducted business at the time, but the parking lot it provided for its customers, along with the means of access leading to the public road, Route 219/250.

■ The *Puffer* case indicates in syllabus point 3 that a business owner is not an insurer of the safety of invited persons, and, absent negligence or willful or wanton misconduct or nuisance, the owner is not liable for injuries sustained by an invited person. However, in syllabus point 4 *Puffer* also holds that:

The owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition. This duty requires the owner or the occupant of premises to exercise ordinary care to protect an invited person from injury inflicted by other persons present on such premises; and if such owner or occupant fails to perform such duty and his negligence is the proximate cause of injuries inflicted upon an invited person by another person such owner or occupant is liable to such invited person.

■ As noted, Deborah Louk was a business invitee of Wal–Mart. Accordingly, Wal–Mart had a duty to maintain the premises in a reasonably safe condition. Appellant alleges that Wal–Mart was negligent in designing the access to Route 219/25 and in not requesting and offering to pay for a traffic light. Appellant asserts that the danger presented by the lack of a traffic light became even more apparent over the course of time prior to the collision at issue here because of a series of other collisions involving access to the Wal–Mart site, of which Wal–Mart was well aware. In effect, the claim is that the business premises were not maintained in a reasonably safe condition because the means of access to and from the premises was unsafe in design and use. In considering the issues raised by Wal–Mart's status as the operator of a business premises, we also reviewed the evidence bearing on the activities of Gray Engineering, in which, as this Court understands it, Wal–Mart played a role through its own, in-house engineering firm. We have set out above some of the testimony adduced by appellant in this respect.

■ We reiterate, with respect to Wal–Mart in its status as an operator of a business premises, that " '[t]o be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury.' Point 3, syllabus, *Hartley v. Crede,* [140] W.Va. [133], [82 S.E.2d 672]." Syllabus point 5, *Puffer v. Hub Cigar Store, Id.* Moreover, "[a] person is not liable for damages which result from an event which was not expected and could not reasonably have been anticipated by an ordinarily prudent person." Syllabus point 6, *Puffer v. Hub Cigar Store, Id.*

The *Puffer* Court discussed foreseeability by quoting from *Matthews v. Cumberland and Allegheny Gas Company,* 138 W.Va. 639, 77 S.E.2d 180 (1953), as follows: " 'If an occurrence is one that could not reasonably have been expected the defendant is not liable. Foreseeableness or reasonable anticipation of the consequences of an act is determinative of defendant's negligence.' *Dennis v.*

*Odend'Hal–Monks Corporation,* 182 Va. 77, 28 S.E.2d 4." *Puffer,* 140 W.Va. at 337, 84 S.E.2d at 153.

■ Given the fact that other accidents had occurred at this northern entrance/exit, as well as at the southern entrance/exit, we find that a jury might conclude it was foreseeable that Wal–Mart could expect more accidents to happen at this access. A jury might conclude that Wal–Mart had reason to know and appreciate the danger because of its in-house engineering capability and the history of collisions entering or leaving the Wal–Mart premises. We believe a jury might also find that the design of the access, in which Wal–Mart actively participated and then put in place during construction, was a proximate cause of the collision resulting in the death of Deborah Louk's death.[13] Or, as we mentioned above with respect to Gray Engineering, the jury might reach a contrary conclusion or assess at least a part of the fault to the DOH.

## COMPARATIVE NEGLIGENCE

■ The trial judge also grounded his directed verdict decision on the fact that Deborah Louk was contributorily negligent. The judge stated, "[t]he evidence at this point is uncontroverted that, unfortunately, Mrs. Louk pulled out into the face of oncoming traffic, and we would have to state that—that was the cause of her being involved in this accident without question." The judge made a determination that Ms. Louk's comparative negligence was equal to or greater than that of other tortfeasors, as a matter of law. In so doing, he took the question from the jury. In this regard, we have said that ordinarily negligence and contributory negligence are mixed questions of law and fact for the jury's determination, *Chambers v. Princeton Power Co.,* 93 W.Va. 598, 117 S.E. 480 (1923), and we do here apply to comparative negligence our former law on the issue of contributory negligence.

■ "The questions of negligence and contributory negligence are for the jury when the evidence is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them." Syllabus point 3, *Davis v. Sargent,* 138 W.Va. 861, 78 S.E.2d 217 (1953). Even though the fact is undisputed that Deborah Louk pulled out of the Wal–Mart parking lot into the path of an oncoming vehicle, we believe that jurors reasonably might reach differing conclusions as to whether the negligence of Wal–Mart, Gray Engineering, and the DOH, if any, was a greater contributing cause to the collision than was the

13. Wal–Mart's business premises included its store, parking lot, and means of access to the public way. The collision at issue here occurred on Route 219/250 and not on those premises. Therefore, in order for the jury to find against Wal–Mart, it must conclude that the proximate cause of the Louk collision was Wal–Mart's negligent failure to provide a reasonably safe business premises. In this connection, we deem that the premises *includes all of the access over which the jury determines Wal–Mart had effective direction or control at the time of any negligent conduct.* Conceivably, part of the access provided by or at the direction of Wal–Mart lies on land within the public right of way connecting the Wal–Mart premises to the traveled portions of Route 219/250 existing prior to the construction of the access. Obviously, Wal–Mart is not to be held responsible for conditions created by the maintenance of portions of the access road within the public way after its construction. Accordingly, in order to hold Wal–Mart liable, the condition giving rise to the collision must either be on Wal–Mart's premises or must have constituted a condition on the access which Wal–Mart caused to occur or of which Wal–Mart had reason to know and the capacity to correct. *See Scantlin v. State Farm Insurance Co.,* 652 So.2d 640 (La. App.1995) (the issue of whether a drainage ditch adjacent to a parking lot presented an unreasonable risk of harm to customers using the parking lot was a question for the jury to decide); *Kernor v. New Jersey Bell Telephone Co.,* 61 N.J. 470, 295 A.2d 356 (1972) (testimony disclosed the existence of a driveway cut in the sidewalk which led to a garage before the tenant took control of the premises, tore down the garage, graded the parking lot, and installed a parking meter at the corner of the driveway cut; from this testimony a jury could conclude that the tenant, by its affirmative acts, had created or enhanced the illusion that there was no driveway cut so a casual pedestrian could have been misled, and a jury question was presented as to the applicability of the principle which renders an abutting landowner or tenant liable if he makes the sidewalk more dangerous than before.)

negligence of Ms. Louk, if any. In this regard, they may consider a variety of factors shown by the evidence bearing on the cause or causes of the collision.

There was testimony from Vickie Louk, a passenger in Deborah Louk's vehicle, that Deborah Louk was watchful of traffic and observed the traffic coming from both directions prior to driving onto the highway. Harold French, an eye witness to the accident, testified that he observed Deborah Louk looking to the right and left prior to driving onto the highway. Appellant alleges Deborah Louk was not negligent in causing the accident and that Wal–Mart and Gray Engineering were negligent in the design of the access onto the highway. We are conscious that when the question of comparative negligence goes to the jury, a finding that Ms. Louk's negligence was at least equal to that of other responsible parties would foreclose recovery to appellant. *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979). Nonetheless, we believe that the evidence is sufficiently conflicting that it is for the jury to decide whether and to what extent the negligence of Wal–Mart, Gray Engineering, and the DOH [14], if any, contributed to the collision and to compare that with whether and to what extent the negligence of Deborah Louk contributed to the collision. In short, we do not believe that issue to be "beyond question".

For the reasons assigned, we affirm the circuit court's ruling as to the Division of Highways and its commissioner and reverse its ruling granting a directed verdict in favor of Wal–Mart and Gray Engineering and remand the cause for further proceedings, including a new trial.

Affirmed in part, reversed in part, and remanded.

RECHT, Judge, sitting by temporary assignment.

14. Although the DOH is no longer a party to this action, the jury may consider the negligence of all joint tortfeasors, whether parties or not. *See Haba v. Big Arm Bar & Grill, Inc.*, 196 W.Va. 129, 468 S.E.2d 915 (1996), where we approved implicitly the circuit court allowing the negligence of a non-party joint tortfeasor to be considered by the jury.