WEBB, JUDGE:
Claimant Ricky E. Bowman originally brought this action for damage to his vehicle and for personal injuries to his minor daughter Dianna Bowman; however, Dianna Bowman is now of majority so she is a proper party claimant. The incident which brought about this claim occurred when claimant Dianna Bowman was traveling north on Route 214 in Yawkey, Lincoln County, lost control of the vehicle she was driving which was owned by her father, and had an accident on property belonging to respondent. This portion of Route 214 and the adjacent property is maintained by respondent in Lincoln County. The Court is of the opinion to deny this claim for the reasons stated more fully below.
Claimants contend that respondent was negligent in its maintenance of the berm of Route 214 at the location of this incident in that the culvert hole was located too close to the road and it was camouflaged by high grass and weeds creating a hazardous condition to drivers. Claimants also contend that respondent could have placed a grate over the large culvert hole to prevent vehicles that are forced to use the berm from driving into such a deep hole. In the alternative, claimants contend that respondent could have at least put up warning signs to alert drivers of the hazardous condition ahead. Claimant Ricky Bowman seeks an award in the amount of $10,575.00 for damage to his vehicle. His vehicle was appraised by Ricky Woodrum who testified that he is certified in estimating vehicle damage. Mr. Woodrum testified that the damage to the vehicle exceeded its value. The results of the appraisal were based on top N.A.D.A. book value. Ms. Bowman suffered personal injuries as a result of this incident, but all of her medical expenses were paid for by insurance.
Respondent asserts that driver error on the part of claimant Dianna Bowman was the cause of this accident because Ms. Bowman negligently lost control of her vehicle as she was proceeding around the curve prior to the Yawkey substation. *144 Respondent also asserts that Ms. Bowman should have been able to regain control of her vehicle on the gravel lot prior to reaching the culvert hole, because the distance from where the vehicle entered the lot to the culvert hole is approximately two hundred feet. Further, respondent states that the culvert was six feet off the roadway which it considers to be a safe distance from the road, and, thus, does not present a hazard to the traveling public.
Claimant Dianna Bowman[6] was sixteen years of age at the time of the incident which is the subject matter of this claim. Ms. Bowman was a student at Duval High School when this incident occurred. On May 28, 1998, she received a phone call while at school from a friend’s mother who asked if she and her friend, Tracy Miller, would come to the hospital to be with her daughter whose grandfather had just died. Dianna Bowman, Tracy Miller, and a male friend named “Gary” got permission to leave Duval High school early. Dianna Bowman drove her father’s 1997 Chevrolet Cavalier with Ms. Miller and Gary as passengers. They left school between 11:30 a.m. and noon to drive to Charleston Area Medical Center in Charleston. Claimant Dianna Bowman dropped off her friend Gary at his home just a few miles from the school. Tracy Miller remained in the vehicle with Ms. Bowman as a front seat passenger. They proceeded driving on Route 3 until reaching the intersection of Route 3 and Route 214. At the intersection, claimant Dianna Bowman had a yield sign at which she brought the vehicle to a complete stop. She then turned onto Route 214 and proceeded northbound for a short distance before reaching a curve. She estimated that she was traveling between thirty-five and forty miles per hour in a fifty-five mile per hour zone. She rounded the curve safely, but just as she was coming out of the curve, a white truck allegedly crossed the center line and forced Ms. Bowman’s vehicle partially off the road where she proceeded onto a gravel parking lot owned and maintained by the respondent. Claimant Dianna Bowman’s passenger also testified that she observed the white truck cross the center line and come about one foot into Ms. Bowman’s lane of travel. Ms. Bowman stated that it was approximately a foot to a foot and a half into her lane. She testified that she had very little room to maneuver and that when she did go off the road just slightly, her tires hit the gravel. She attempted to maneuver the vehicle back onto the road, but the vehicle kept sliding out of control and “fish-tailing” in the gravel. The vehicle then slid sideways over a large culvert hole on the gravel lot and flipped over on its top. Apparently, one of the tires caught the hole causing the vehicle to flip over on its top and slide a significant distance from the hole where it came to rest. Both claimant Dianna Bowman and Ms. Miller were temporarily trapped in the vehicle. Ms. Bowman was eventually able to climb out of the. vehicle on her own. She immediately went and helped Ms. Miller out of the vehicle. Fortunately, Ms. Miller was not injured. However, Ms. Bowman had a serious cut on the side of her head which was bleeding significantly. She also had a less serious cut to her left middle finger which was also bleeding.
Ms. Bowman further testified that she had driven this section of road many times and was very familiar with it. She stated that she had to drive over this'section *145 of road to get to most places due to the location of her home.
Claimant Ricky Bowman testified that he closely examined the culvert hole at issue and estimated it to be approximately six feet deep and approximately eight to ten feet in diameter. He described the hole as being only four feet from the edge of the road. In addition, he introduced photographs into evidence that depicted thick, high grass, weeds, and shrubbery that had grown around the culvert hole. The photos also demonstrated that this hole was not visible to the traveling public due to the high weeds, grass, and shrubbery. Mr. Bowman opined that it was feasible to place a metal grate of some kind over this hole, or, in the alternative, that it was feasible and safer for the respondent to continue running the culvert pipe underground in which case there would be no hole at all.
W estVirginia Senior State Trooper David Michael Lee was the investigating police officer at this incident. He was first notified of the incident at 1:00 p.m. and arrived on the scene at 1:15 p.m. He indicated that the time of the accident was at approximately 12:20 p.m. Trooper Lee took measurements, photographs, and statements from all individuals involved including the two eye witnesses, and then put his findings in the W est Virginia Uniform Traffic Accident Report. According to the accident report, the weather at the time of the incident was cloudy, but there was no rain and the road condition was dry. Trooper Lee did not testify to or indicate in his accident report, what caused this incident. He did list as a “contributing circumstance” the driver’s failure to maintain control of the vehicle. However, he testified that the reason he put this down was the mere fact that she lost control of the vehicle and left the roadway. Trooper Lee did not know at what speed Ms. Bowman was traveling. He testified that her vehicle stopped sliding between 75-90 feet from the culvert hole. He based this testimony from his drawing in the accident report, which while not to scale was still adequately drawn by using relevant and helpful reference points. Trooper Lee was unable to substantiate Ms. Bowman’s claim that another vehicle forced her off the road either by eye-witness testimony or other evidence obtained from the scene. Finally, Trooper Lee also stated that the culvert had “some weeds and shrubbery around it.”
Darrell Quintrell, an employee of the respondent at the Yawkey substation, testified that he was operating the end-loader when he heard a large amount of gravel hitting the back of the machine very hard. That caused him to turn around to see claimant’s vehicle lying on its top. He was the first to arrive on the scene and he helped the girls walk across the road to the substation office to help stop Ms. Bowman’s bleeding and to try to calm them until the ambulance arrived. Jeff Hughes, also an employee at the Yawkey substation, witnessed the incident and had already called 911. Mr. Quintrell testified that he encouraged Ms. Bowman to call her father which she reluctantly did. According to Mr. Quintrell, she was afraid to call him because she had damaged his car. Ms. Bowman and Ms. Miller were transported by ambulance to Charleston Area Medical Center General Division where they were treated and released.
At the location of this incident, State Route 214 is a two-lane road with a yellow center line and white lines on each edge. It is a first priority, blacktopped highway with a width of approximately eighteen feet six inches. According to Larry Pauley, the Lincoln County Supervisor for respondent, the hole where the culvert is located is on respondent’s property. The Yawkey substation is adjacent to State Route 214. Directly across Route 214, respondent owns a lot for the storage of gravel and salt that is adjacent to the road and this lot is also part of the substation. There is a culvert pipe with its inlet end on respondent’s headquarters lot which passes beneath *146 the highway and then through the gravel/salt storage lotto the creek. The culvertpipe itself is an 18 inch or 24 inch diameter pipe and it may be thirty to forty feet in length. The culvert hole is located on the gravel/salt storage lot. He described the culvert hole as being some six feet from the edge of the pavement of Route 214. He explained that this is actually a “clean-out” or a drop-inlet to provide an opening where employees have access to the culvert pipe for cleaning it out. The culvert pipe is cleaned out from that hole on an as needed basis by respondent’s employees. There is no grate over the culvert hole. It is his opinion that a grate is not needed over the culvert hole as the six foot area between the hole and the Route 214 is sufficient for travelers on the highway to make a recovery.
Jeffrey L. Hughes, an equipment operator for respondent in Lincoln County, testified that he was driving a dump truck from respondent’s gravel storage lot at the time of this incident. His truck had just been loaded with gravel by Mr. Quintrell who was operating the end-loader. Mr. Hughes testified that after being loaded with gravel he started driving south on Route 214. He testified that he drove into the curve at issue in this claim and all the sudden he heard “a commotion.” This caused him to look in his rear view mirror where he saw a car fishtail on the gravel parking lot, hit the culvert, and then turn over. Mr. Hughes did not notice what type of vehicle it was that had just passed him. He stated “it was just any other vehicle as far as when I passed the vehicle.” He does not recall seeing any other vehicles on the road other than his and the one that went off the road. He testified that his vehicle was not across the yellow line into the other lane. Furthermore, he stated that his truck was loaded, he had just started driving from respondent’s lot, and he had not gained much speed when he observed claimant’s accident occurring.
In the instant claim, the Court is of the opinion that the respondent may have been negligent in regard to the location and maintenance of the hole on its property adjacent to Route 214; however, this was not a proximate cause of the accident. To be actionable, respondent’s negligence must be a proximate cause of the claimant’s injuries. Tracy v. Cottrell, 206 W.Va. 363; 524 S.E.2d 879 (1999); Louk v. Isuzu Motors, Inc., 198 W.Va. 250; 479 S.E.2d 911 (1996); Roush v. Johnson, 139 W.Va. 607, 80 S.E.2d 857 (1954). Drivers also have a duty of reasonable care in operating their vehicles while driving on West Virginia’s highways. The evidence established that claimant Dianna Bowman did not properly maintain control of her vehicle under the circumstances. The evidence as to whether or not some other vehicle did, in fact, cross the center line and force the claimant off the road is contradictory in the record. However, regardless of the answer to this issue, the facts are such that claimant Dianna Bowman had sufficient time and space while on the gravel lot to bring the vehicle under control. A reasonably prudent driver would have been able to maintain control of the vehicle. The Court concludes that claimant Dianna Bowman was negligent in her failure to maintain proper control of the vehicle she was operating on Route 214 and that such negligence was the sole proximate cause of the accident. Therefore, claimants Ricky E. Bowman and Dianna Bowman may not make a recovery in this claim.
In accordance with the finding of facts and the conclusions of law as stated herein above, the Court is of the opinion to and does deny this claim.
Claim disallowed.

 At the time of this accident, Ms. Bowman was not married; since that time she has married and now uses her married name, Dianna Michelle Smith. Although Mrs. Smith’s friend referred to her as “Shelly,” the Court will refer to her as Dianna Bowman for the purposes of this opinion.