686 S.E.2d 75

**Howard WRENN and Sandra Belcher, as Natural Parents and Co–Administrators of the Estate of Matthew Wrenn; and Angelia Harper, as Natural Mother and Administrator of the Estate of Justin Janes, Plaintiffs Below, Appellants**

v.

**The WEST VIRGINIA DEPARTMENT OF TRANSPORTATION, DIVISION OF HIGHWAYS, Defendant Below, Appellee.**

No. 34717.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 2009.

Decided Nov. 2, 2009.

Dissenting Opinion of Justice Davis Nov. 12, 2009.

Mark W. Kelley, Esq., Keith B. Walker, Esq., Ray, Winton & Kelley, Charleston, WV, for the Appellants.

John L. MacCorkle, Esq., MacCorkle, Lavender, Casey & Sweeney, Charleston, WV, for the Appellee.

WORKMAN, Justice:

This case is before this Court upon an appeal from a final order of the Circuit Court of Wyoming County, West Virginia, granting a motion to dismiss filed by the Appellee and Defendant below, the West Virginia Department of Transportation, Division of Highways (hereinafter called "DOH"). In that Order, the circuit court concluded that the DOH is entitled to sovereign immunity in this case because the plain language of Endorsement No. 7 of the State of West Virginia's (hereinafter called "the State") liability insurance policy excludes coverage for the claims asserted by the Appellants and Plaintiffs below, the Estates of Matthew Wrenn and Justin Janes. For the following reasons, the Court affirms the circuit court's Order and holds that the exemptions contained in Endorsement No. 7 do not violate West Virginia law or public policy.

## I.

### FACTS

Returning from a hunting trip on the evening of November 26, 2007, two young men, Matthew Wrenn and Justin Janes, were traveling together in a vehicle on County Route 35/1, also known as Devil's Fork Road. As the men rounded an "S" curve and started across a single-lane bridge, their vehicle dropped off the edge and overturned in a deep impoundment of water. Both men drowned.

The Appellants, Howard Wrenn and Sandra Belcher, as natural parents and co-administrators of the estate of Matthew Wrenn, and Angelia Harper, as natural mother and administrator of the estate of Justin Janes, allege that numerous accidents have occurred at this particular site on Devil's Fork Road. Indeed, another motorist had died in a similar accident at the same bridge only months before the deaths in this case. The Appellants state that this section of the road consists of multiple, sharp "S" curves, which open into a single-lane bridge that crosses several steel culverts. They allege that, as a result of "washing out" and the buildup of excess debris, a deep impoundment of water has formed approximately fifteen feet under the bridge. They further assert that the bridge itself has no shoulder, guardrails, warning signs, fog lines, edge lines, or other markings to alert motorists to the danger. Moreover, no signs precede the bridge to warn motorists of what they are approaching.

The Appellants further contend that following the previous deadly accident on this road, local citizens contacted the DOH to request that it inspect the site and take the steps necessary to eliminate or minimize the existing hazards. The DOH failed to re-

spond to these requests; indeed, one citizen had allegedly set up a meeting with a DOH official who then failed to appear at the date and time arranged.

On April 18, 2008, the Appellants filed a complaint alleging that the accident in question was directly and proximately caused by the DOH's negligent failure to inspect, repair, maintain, attend to and make reasonably safe this section of Devil's Fork Road. They further requested that, should the DOH invoke exclusions to its insurance coverage contained in "Endorsement No. 7" to its liability policy, the circuit court declare such exclusion null and void as contravening West Virginia law and public policy.[1]

In lieu of filing an answer, the DOH filed a motion to dismiss under West Virginia Rule of Civil Procedure 12(b)(1), alleging that the circuit court lacked jurisdiction because the State is entitled to sovereign immunity. As predicted, the DOH asserted that exclusions set forth in Endorsement No. 7 to the State's liability insurance policy preclude coverage of the types of claims asserted in the Complaint. After conducting oral argument, the circuit court granted the DOH's motion, finding that the language of Endorsement No. 7 clearly and unambiguously excluded coverage of the claims asserted and that the DOH was entitled to sovereign immunity. Accordingly, the circuit court dismissed the Appellants' Complaint with prejudice.

## II.

### STANDARD OF REVIEW

The Court generally reviews circuit court orders granting motions to dismiss *de novo.* Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). Moreover, " 'appellate courts review questions involving principles of sovereign immunity *de novo.*' " *Blessing v. Nat'l Eng'g & Contracting Co.,* 222 W.Va. 267, 269, 664 S.E.2d 152, 154 (2008) (*quoting Gribben v. Kirk,* 195 W.Va. 488, 493, 466 S.E.2d 147, 152 (1995)). Simi-

larly, the appropriate standard of review for the determination of public policy questions is also plenary. *Mitchell v. Broadnax,* 208 W.Va. 36, 42, 537 S.E.2d 882, 888 (2000), superseded by statute on other grounds as stated in *State ex rel. Citifinancial, Inc. v. Madden,* 223 W.Va. 229, 236 n. 20, 672 S.E.2d 365, 372 n. 20 (2008). Consequently, the Court reviews both of the issued raised in this appeal under the *de novo* standard.

## III.

### DISCUSSION

#### A. Overview of West Virginia's Liability Insurance Policy

Article VI, Section 35 of the Constitution of West Virginia grants sovereign immunity to the State. Regarding the DOH in particular, West Virginia Code § 17–4–37 (2009) specifically grants sovereign immunity for damages resulting from "the defective construction or condition of any state road or bridge."

Despite this broad immunity, the West Virginia Legislature has recognized that the State should, in certain instances, be held liable for damages resulting from acts undertaken, or responsibilities incurred, by its officials, agents and employees. Accordingly, West Virginia Code § 29–12–1 to –13 (2008) requires that the State establish and develop "an adequate, economical and sound state insurance and bonding service on all state property, activities and responsibilities." W. Va.Code § 29–12–1.

To accomplish this goal, the Legislature established the State Board of Risk and Insurance Management (hereinafter called "BRIM"), which is charged with the duty of supervising and controlling the state insurance program, *id.* at § 29–12–3, and is given significant discretion in doing so:

> [BRIM] has, without limitation and in its discretion as it seems necessary for the benefit of the insurance program, general

---

**1.** The Complaint additionally sought a declaratory judgment that Endorsement No. 7 is null and void because it has not been signed. The Appellants subsequently waived that issue, however, and it is not before the Court in this appeal. *See*

*Tiernan v. Charleston Area Med. Ctr., Inc.,* 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived.").

supervision and control over the insurance of state property, activities and responsibilities, including:

(A) The acquisition and cancellation of state insurance;

(B) Determination of the kind or kinds of coverage;

(C) Determination of the amount or limits for each kind of coverage;

(D) *Determination of the conditions, limitations, exclusions, endorsements, amendments and deductible forms of insurance coverage;*

(E) Inspections or examinations relating to insurance coverage of state property, activities and responsibilities;

(F) Reinsurance; and

(G) Any and all matters, factors and considerations entering into negotiations for advantageous rates on and coverage of such state property, activities and responsibilities.

*Id.* at § 29–12–5(a)(1) (emphasis added). West Virginia Code § 29–12–5(a)(2) further provides that:

[BRIM] shall endeavor to secure *reasonably broad protection* against loss, damage or liability to state property and on account of state activities and responsibilities by proper, adequate, available and affordable insurance coverage and through the introduction and employment of sound and accepted principles of insurance, methods of protection and principles of loss control and risk.

(Emphasis added.) Importantly, however, "[t]he board is not required to provide insurance for every state property, activity or responsibility." *Id.* at § 29–12–5(a)(3).

■ Any insurance policy purchased or contracted for by BRIM must provide that any claims against the State arising under that policy are exempt from the constitutional immunity otherwise afforded to the State. *Id.* at § 29–12–5(a)(4). In other words, "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." Syl. Pt. 2, *Pittsburgh*

*Elevator v. West Virginia Bd. of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983). Nevertheless, the State is still constitutionally immune from claims arising out of any activity or responsibility that is not covered under its policy. W. Va.Code § 29–12–5(a)(4).

### B. The Policy and Exclusions Applicable in this Case

The State's liability policy in effect at the time of the events underlying this case, Policy No. RMGL 159–52–62 (hereinafter called "the Policy"), provided liability insurance for any "wrongful act" of the "insured." It defines "wrongful act" as "any actual or alleged act, breach of duty, neglect, ... or omission by the 'insured(s)' in the performance of their dut[ies]...." Policy, Coverage E, § 4. Thus, under the plain language of the Policy, any negligence or breach of duty by the insured in the performance of its duties would be covered. In this case, the insured includes the DOH.

Endorsement No. 7 to the Policy, however, significantly restricts the DOH's liability for "wrongful acts." It provides:

It is agreed that the insurance afforded under this policy *does not apply to any claim resulting from the ownership, design, selection, installation, maintenance, location, supervision, operation, construction, use, or control* of streets (including sidewalks, highways or other public thoroughfares), bridges, tunnels, dams, culverts, storm or sanitary sewers, rights-of-way, signs, warnings, markers, markings, guardrails, fences, *or related or similar activities or things* but it is agreed that the insurance afforded under this policy *does apply* (1) to claims of **"bodily injury"** or **"property damage"** *which both directly result from and occur while employees of the State of West Virginia are physically present at the site of the incident* at which the **"bodily injury"** or **"property damage"** occurred performing construction, maintenance, repair, or cleaning (but excluding inspection of work being performed or materials being used by others) and (2) to claims of **"bodily injury"** or **"property damage"** which arise out of the mainte-

nance or use of sidewalks which abut buildings covered by the policy.

Endorsement No. 7 to Policy No. RMGL 159–52–62 (effective July 1, 2007) (some emphasis added).

### 1. Endorsement No. 7 Excludes Coverage of the Appellants' Claims

The DOH contends that the clear language of Endorsement No. 7 limits the State's insurance coverage to situations in which DOH employees are present at the site of the incident from which the claim arises, and the claim results from the presence of said employees. Put simply, coverage is excluded if no DOH employee is physically present at the scene of the accident. Because no DOH personnel were present on Devil's Fork Road when the accident occurred in this case, the DOH contends that Endorsement No. 7 unambiguously excludes coverage for the asserted claims. It points out that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co. of Am.*, 153 W.Va. 813, 172 S.E.2d 714 (1970).

The Appellants do not disagree that for claims resulting from one of the matters listed in Endorsement No. 7, coverage is provided only if a DOH employee is present at the scene. Instead, they assert that, on its face, the language of Endorsement No. 7 does not specifically exclude coverage for claims based on the DOH's "failure to inspect" or "failure to make reasonably safe" its roads, bridges or rights-of-way.[2] They point to the well-settled axiom that "[w]here the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. Pt. 5, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987), overruled, in part, on other grounds by *Potesta v. U.S. Fid. & Guar. Co.*, 202

W.Va. 308, 504 S.E.2d 135 (1998). They further note that, "[t]he general rule of construction in governmental tort legislation cases favors liability, not immunity." Syl. Pt. 2, in part, *Marlin v. Bill Rich Const., Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996). In light of these rules of strict construction favoring liability, the Appellants contend that Endorsement No. 7 must be limited solely to claims arising from the matters listed therein. Because they specifically pleaded that the DOH engaged in "wrongful acts" by failing to inspect and make reasonably safe the section of Devil's Fork Road at issue, and because the "failure to inspect" and "failure to make safe" claims are not explicitly excluded from coverage under Endorsement No. 7, the Appellants urge this Court to find that the Policy provides coverage in this case.

Although the "failure to inspect" and "failure to make safe" are not specifically identified among the numerous exclusions listed in Endorsement No. 7, these claims necessarily "result from," or are at least "related to," the DOH's ownership of and control over, not to mention its design, maintenance and construction of, the road, bridge, culvert and right-of-way that constituted the site of the accident in this case. Clearly, the DOH would have no duty to inspect any of these entities if it did not own and control them. Similarly, it is difficult to imagine how the DOH could "make safe" its roads, bridges or rights-of-way without engaging in construction or maintenance of the site, or without installing "signs, warnings, markers, markings, guardrails, [or] fences . . . ." Because all of those acts are clearly excluded from coverage, the overarching duty to "make safe" logically must be excluded as well. Thus, because Endorsement No. 7 excludes coverage for claims "resulting from" its ownership, control, design, construction or maintenance of a particular road, bridge, culvert or right-of-way, as well as activities that are "related or similar to" those named matters, the Ap-

---

**2.** The Appellants rely on West Virginia Code § 17–2A–8 (2009), entitled "Powers, duties and responsibilities of commissioner," and the Department of Highway's Maintenance Manual, to support their position that the DOH is bestowed with the duties to inspect and make safe the roads, bridges and rights-of-way under its control, and should, therefore, be held liable for any breach of those duties.

pellants' claims in this action are clearly excluded as well.

The Appellants would have the Court hold that because the terms "inspect" and "make safe" are not explicitly included in the language of Endorsement No. 7, claims arising from the breach of those duties are not excluded from coverage. The State, however, cannot reasonably be expected to list every different duty or task that might conceivably be necessary to further road, bridge or right-of-way maintenance, or that might be appropriate only because the DOH owns, supervises, or controls a system of roads, bridges and rights-of-way. Indeed, as the DOH argues, it should not be incumbent upon it "to provide an exhaustive list of alternative phrases and characterizations for the exclusions expressly stated in the Endorsement." Such a holding would merely encourage imaginatively-named claims by creative attorneys as a means to circumvent application of the exclusionary language in every case.

Finally, while the Appellants correctly point out that long-standing precedent in West Virginia encourages strict construction of insurance policies in favor of liability, *see* Syl. Pt. 5, *McMahon & Sons,* 177 W.Va. at 736, 356 S.E.2d at 490, it is equally clear that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation...." *Keffer,* 153 W.Va. at 815–16, 172 S.E.2d at 715. Because Endorsement No. 7 is clear and unambiguous, no construction, strict or otherwise, is required.

The conclusion that the language of Endorsement No. 7 is unambiguous clearly comports with this Court's prior holding in *Louk v. Isuzu Motors, Inc.,* 198 W.Va. 250, 479 S.E.2d 911 (1996). In *Louk,* a motorist died in a vehicle accident that occurred while she was exiting a Wal–Mart parking lot and attempting to cross a state highway. *Id.* at 255, 479 S.E.2d at 916. Her estate sued the DOH and Wal–Mart arguing, among other things, that the DOH had negligently approved the site plan without reviewing it as required by DOH regulations, which resulted in the approval of a negligently-designed plan. *Id.* at 256, 479 S.E.2d at 917. The circuit court granted summary judgment to the DOH, finding that the claims were barred by sovereign immunity. *Id.* at 255, 479 S.E.2d at 915.

As in the instant case, the State's insurance policy in effect at the time of the accident in *Louk* covered "wrongful acts" by the DOH. Endorsement No. 10 to that policy, however, provided that coverage would not apply to the:

"Ownership, design, maintenance, supervision, operation, use or control of streets, including sidewalks, highways or other public thoroughfares, bridges, tunnels, dams, culverts, storm or sanitary sewers, but this exclusion does not apply to bodily injury or property damage which arises out of and occurs during the performance of construction, street cleaning and repair operations or arises out of the maintenance or use of sidewalks which abut buildings covered by this policy."

198 W.Va. at 257, 479 S.E.2d at 918. On appeal, this Court concluded that the language of Endorsement No. 10 was clear and unambiguous and "[s]ince there was no construction, maintenance, or repair work underway at the time and place of the collision, the policy provides no coverage against the alleged wrongful acts of the DOH." *Id.* The Court, therefore, affirmed the circuit court's ruling that sovereign immunity barred the claims against the DOH. *Id.* Although not expressly stated in that opinion, the Court necessarily believed that the alleged claims related to the design of the intersection at issue and, thus, fell within the ambit of the exclusions in Endorsement No. 10.

As in *Louk,* the exclusionary language in this case is unambiguous with regard to the claims raised by the Appellants. Because the claims clearly fall within the enumerated exceptions to the Policy's coverage, and because no DOH employees were present at the scene of the accident, the alleged wrongful acts of the DOH are excluded by Endorsement No. 7.

Finally, the decision here is not contrary to the holding of *Russell v. Bush & Burchett, Inc.,* 210 W.Va. 699, 559 S.E.2d 36 (2001), in which this Court concluded that an earlier, but nearly identical, version of Endorsement

No. 7 did not exclude a claim against the DOH for the negligent selection and training of a bridge contractor. In *Russell*, the plaintiff was injured while working for a DOH contractor. *Id.* at 702, 559 S.E.2d at 39. He sued the contractor directly under a deliberate intent theory and sued the DOH for negligent selection and training. *Id.* The DOH argued that it was immune from suit because the endorsement in effect at that time excluded "any claim resulting from the ownership, design, selection, installation, maintenance, location, supervision, operation, construction, use or control of ... *bridges* ... or related or similar activities or things...." *Id.* at 704, 559 S.E.2d at 41 (emphasis added). The plaintiff responded that the bridge-related exclusionary language contained in the endorsement did not apply to his claim against the DOH because his theory of liability was based on "negligent selection and retention conduct by the DOH, not bridge construction, installation, etc." *Id.* at 705, 559 S.E.2d at 42.

Considering these arguments, the circuit court agreed with the plaintiff, and this Court affirmed, stating:

> Any negligence in the DOH's bidder selection process was *separate and remote in time and place from and anterior to any bridge construction.* While bidder selection and retention could be arguably said to be "related" to bridge construction, such a "relatedness" connection could also be made to the most distant and tenuous activities.

*Id.* at 706, 559 S.E.2d at 43 (emphasis added). Applying "the principles of law that narrowly construe exclusionary language, that favor liability over immunity, and that favor state accountability," this Court concluded that the plaintiff's claim was not "categorically" excluded by the exclusionary language. *Id.* Thus, the Court determined that DOH's policy provided coverage and immunity was not available to the State in that case. *Id.*

Unlike the claims asserted in *Russell*, the Appellants' claims in this case are not "sepa-

rate and remote in time and place" from the DOH's ownership of and control over Devil's Fork Road. While it seems clear that the DOH should have inspected the site of the prior accidents and taken steps to improve the safety of motorists on Devil's Fork Road, any duty to take such steps *directly* results from and is related to the DOH's position of ownership of and control over that road, and the plain language of Endorsement No. 7 clearly excludes such claims.[3]

### 2. *Endorsement No. 7 is not contrary to West Virginia law and public policy.*

█ The Appellants argue, in the alternative, that the language of Endorsement No. 7 is so restrictive that it contravenes West Virginia law and public policy. While conceding that BRIM was not required to obtain a policy that would cover all actions taken by the State, they contend that the legislative mandate requires broader coverage than Endorsement No. 7 permits. They assert that, in setting forth its intents and objectives in obtaining State insurance, the Legislature provided that activities undertaken and responsibilities incurred by the State "are subject to liabilities which can and should be covered by a sound and adequate insurance program...." To achieve this broad goal, the Legislature directed BRIM to obtain an insurance policy which would provide "reasonably broad protection." W. Va.Code § 29–12–5(a)(2). The Appellants assert, however, that Endorsement No. 7 effectively excludes the DOH from liability on essentially all of its primary functions and, thus, does not provide coverage that is "reasonably broad."

The Appellants further note that the Court has previously, in dicta, questioned the validity of insurance policies that do not insure a state agency against damages resulting from the negligent performance of an agency's primary function. In *Ayersman v. West Virginia Division of Environmental Protection*, 208 W.Va. 544, 542 S.E.2d 58 (2000), the Court reinstated a case against the West Virginia Department of Environmental Pro-

---

**3.** The Appellants additionally rely on several circuit court decisions that sustain claims similar to those asserted in the instant case, and thereby extend insurance coverage to incidences at

which no DOH employee was present. Those decisions hold no precedential value, however, and are not persuasive to this Court.

tection (hereinafter called "DEP") by a landowner who alleged that his property had been flooded as the result of the DEP's negligence in a nearby mine reclamation project. The circuit court had dismissed the case finding that the DEP was immune from suit because no insurance policy provided liability coverage for this type of claim. 208 W.Va. at 545–46, 542 S.E.2d at 59–60. This Court reversed because the circuit court had failed to make adequate findings of fact and conclusions of law. *Id.* at 547, 542 S.E.2d at 61.

While acknowledging that it was not necessary to analyze the State's insurance policy in reaching the ultimate decision, the Court in *Ayersman* nevertheless noted, in footnote two, that the reclamation of abandoned mine sites is a primary function of the DEP, and that an insurance exclusion which precluded liability for negligent operations of a reclamation site "seems particularly ill-suited for a policy written for the DEP." 208 W.Va. at 546 n. 2, 542 S.E.2d at 60 n. 2. It thus concluded: *"we are skeptical of any policy language that purports to exclude a primary function of the insured."* *Id.* (emphasis added).

The Appellants assert that the instant case raises precisely the issue discussed in *Ayersman,* because the insurance policy here excludes liability for many of the DOH's primary functions. West Virginia Code § 17–2A–8(1) charges the Commissioner of the DOH with, among other things, the ability to "exercise general supervision over the state road program and the construction, reconstruction, repair, and maintenance of state roads and highways." Because liability arising from the performance of these functions is explicitly excluded from coverage by Endorsement No. 7, the Appellants argue that the Policy fails to cover a significant number of the DOH's primary responsibilities.

Undeniably, the broad scope of Endorsement No. 7 excludes coverage for many of the DOH's primary functions. As a consequence, the Court must carefully, indeed skeptically, consider the restrictions in light of the Legislature's stated intention to provide "reasonably broad protection" against liabilities incurred by agencies of the State.

Upon such consideration, however, this Court cannot find that Endorsement No. 7 is contrary to the public policy of this State.

The West Virginia Legislature entrusted BRIM with significant discretionary authority in developing and implementing the State's liability insurance policy. While requiring that such policies provide "reasonably broad protection," W. Va.Code § 29–12–5(a)(2), and cover "injuries occasioned by culpable state action," *id.* at § 29–12–1, the Legislature charged BRIM with determining the "conditions, limitations, exclusions, endorsements, amendments and deductible forms of insurance coverage." *Id.* at § 29–12–5(a)(1)(D). It further stated that BRIM was not "required to provide insurance for every state property, activity or responsibility." *Id.* at § 29–12–5(a)(3). Thus, "[t]he Legislature has also vested in [BRIM] considerable latitude to fix the scope of coverage and contractual exceptions to that coverage by regulation or by negotiation of the terms of particular applicable insurance policies." Syl. Pt. 4, in part, *Parkulo v. West Virginia Bd. of Prob. and Parole,* 199 W.Va. 161, 483 S.E.2d 507 (1996).

In determining the appropriate scope of the insurance coverage, BRIM was faced with an agency that designs, constructs and maintains an extensive system of roads, highways and bridges throughout the State. Unfortunately, accidents causing loss of property, bodily injury, and even death occur frequently in this transportation system, as they do nationally. Because nearly every victim of every accident on these roads, highways and bridges could likely find some basis to sue the DOH for negligence—whether alleging defective design of a curvy mountain road, or that the road had not been sufficiently plowed during bad weather, or simply that a pothole should have been filled but was not—the State would expose itself to enormous liability by covering losses resulting from negligence in its design, construction and maintenance of this system. Thus, although these activities may constitute primary functions of the DOH, requiring the State to provide insurance that covers these functions would likely be unsustainable.

Consequently, in exercising its "considerable latitude" in determining the "conditions, limitations, exclusions, endorsements, amendments and deductible forms of insurance coverage," W. Va.Code § 29–12–5(a)(1)(D), BRIM balanced the competing interests in providing "reasonably broad protection" while ensuring the continued financial viability of the State. In so doing, it settled on a policy covering injuries and losses that "both directly result from and occur while employees of the State of West Virginia are physically present at the site of the incident." Endorsement No. 7. As the DOH points out, many of its numerous employees physically work on its roads, highways, bridges and rights-of-way, and, in emergency situations, that work continues around-the-clock. Accordingly, significant coverage is afforded under the State's Policy, despite the broad exclusions contained in Endorsement No. 7.

Recognizing the breadth of the Division of Highway's "primary functions," and the expense that would be incurred by providing insurance coverage for every function, the coverage currently afforded by the State's liability insurance policy meets the requirement that such coverage provide "significantly broad protection." Although the exclusions contained in Endorsement No. 7 to the State's liability insurance policy preclude coverage of many of the Division of Highway's primary functions, the Endorsement does not violate the laws and public policy of West Virginia.[4]

In so holding, the Court acknowledges that the allegations in this lawsuit indicate that the DOH ignored a serious hazard of which it had been specifically informed, and, if the allegations are true, this Court does not condone the DOH's failure to respond to the citizens' complaints. The condition complained of here is alleged to be a one-lane road with multiple "S" curves which opens onto a bridge with no berm, guardrails, edgeline markings or warning signs, and which is fifteen feet above a deep pool of water. If this description is accurate, it presents a dangerous situation. Moreover, because the

DOH retains the sole power and authority to maintain and make safe roads like Devil's Fork Road, West Virginians who use these roads must watch helplessly as members of their community fall victim to known hazardous conditions.

Despite the DOH's apparent failure to protect the public by more diligent maintenance, it is within the legislative prerogative to determine which activities must be insured. This Court must respect the Legislature's decision to afford considerable latitude to BRIM in determining the scope of insurance coverage for the State's public roads, highways and bridges, and, because the Endorsement in this case comports with the relevant statutory requirements, the State's public policy has not been violated. It is the Legislature's and BRIM's function to decide whether to provide coverage for situations such as the one alleged herein. This Court's function is to give full effect to the plain meaning of a clear and unambiguous policy exclusion.

## IV.

## CONCLUSION

For these reasons, the final Order of the Circuit Court of Wyoming County entered on August 15, 2008, is affirmed.

Affirmed.

Justice DAVIS dissents and reserves the right to file a dissenting opinion.

DAVIS, J., dissenting:

(Filed Nov. 12, 2009)

In this case, two young men met untimely deaths when the vehicle in which they were traveling fell off of a single-lane bridge, which had no posted signs, line markings, shoulder, or guardrails, and plunged fifteen feet into an impoundment of water that had resulted from the failure to clean the culverts over which the bridge traversed. Although the decedents' Estates attempted to recover

---

**4.** The exposure that would result from insuring all of the DOH's "primary functions" is clearly extensive and quite possibly unique. The holding in this case, therefore, is limited to the DOH, and

the Court does not consider whether an insurance policy excluding coverage of any other agency's primary functions would violate public policy.

from the State's insurance policy for the Division of Highways's failure to keep safe and to inspect the subject bridge and corresponding roadway, the majority of the Court has concluded that the applicable policy exclusion precludes coverage under these facts. The majority's decision essentially[1] leaves the victims of this fatal accident without a remedy for their losses even though the DOH had been placed on notice as to the dangerousness of this bridge and accompanying roadway several months *before* the decedents were killed when another motorist died in a fatal accident in this same location[2] and even though the DOH had scheduled and thereafter failed to attend a meeting to discuss local citizens' concerns about the safety of this thoroughfare. Because the result obtained by the majority absolves the DOH of its express statutory duties to keep safe and to inspect the public highways of this State and, thus, fails to hold the DOH accountable for its neglect of those responsibilities under the egregious facts of this case, I respectfully dissent.

The roads and bridges of this State are vital thoroughfares that must be maintained to ensure the safety of our citizenry. In this regard,

> [t]he Legislature notes that there are public highways that run over the surface of this land, over and through the navigable streams, rivers and waterways on this earth and above the surface of this earth in the form of highways in the sky, commonly known as airways. The Legislature finds that each of these types of public highways are essential to the development of this state and that *the health and safety of each of the citizens of this state are affected daily by the availability of each of these three types of public highways,* and that it is in the best interests of the people of this state that each of these be recognized and included within the meaning of public highways . . . .

W. Va.Code § 17-1-3 (1989) (Repl. Vol. 2004) (emphasis added). To accomplish these objectives, the Legislature has assigned the Commissioner of the Division of Highways the task of maintaining the State's public highways. As they relate to the Estates' claims at issue herein, such obligations include the following tasks:

> [i]n addition to all other duties, powers and responsibilities given and assigned to the commissioner in this chapter, the commissioner may:
>
> . . . .
>
> (3) *Conduct investigations* and experiments, *hold hearings and public meetings and attend and participate in meetings* and conferences *within* and without *the state for purposes of acquiring information, making findings and determining courses of action and procedure relative to* advancement and *improvement of the state road and highway system;*
>
> . . . .
>
> (36) *Investigate road conditions,* official conduct of department personnel and fiscal

---

1. The DOH suggests, in its brief before this Court, that, in the absence of applicable insurance coverage, the decedents' Estates may seek redress through the Court of Claims. The Court of Claims specifically excludes from its jurisdiction "any claim . . . [w]ith respect to which a proceeding may be maintained against the State by or on behalf of the claimant in the courts of the State." W. Va.Code § 14-2-14(5) (1967) (Repl. Vol. 2000). Claims such as those asserted by the Estates in this case generally may not be brought against the State because the Legislature has granted the State immunity "in any proceeding to recover damages because of the defective construction or condition of any state road or bridge." W. Va.Code § 17-4-37 (1933) (Repl. Vol. 2004). Thus, because the Estates' claims concern the dangerous condition of the bridge and roadway upon which their decedents perished, it appears that jurisdiction of the Estates' claims would be proper in the Court of Claims if coverage is not provided by the State's policy of insurance. *See* Syl. pt. 2, *Pittsburgh Elevator v. West Virginia Bd. of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983) ("Suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State.").

2. After the first fatal accident, a second accident occurred when a sheriff's deputy's vehicle veered off the bridge and into the impoundment of water thereunder; the sheriff's deputy survived this accident. Following these two accidents, a third accident, which resulted in two fatalities, occurred on this same stretch of public highway; it is this third accident that is the subject of the instant proceeding.

and financial affairs of the department and hold hearings and make findings thereon or on any other matters within the jurisdiction of the department[.]

W. Va.Code § 17–2A–8 (2002) (Repl. Vol. 2004) (emphasis added).

Under the egregious facts of the case *sub judice,* it is apparent that the DOH neglected to fulfill its statutory duties to keep the State's public highways safe, in accordance with W. Va.Code § 17–1–3, and to inspect the public highways of this State, pursuant to W. Va.Code §§ 17–2A–8(3, 36), insofar as there is no evidence that the DOH "[i]nvestigate[d] [the subject] road conditions"[3] or otherwise acted to "improve[ ]"[4] this particular thoroughfare. Moreover, despite the DOH's obligation to "hold hearings and public meetings and [to] attend and participate in meetings and conferences ... for purposes of acquiring information, making findings and determining courses of action and procedure relative to ... improvement of the state road and highway system,"[5] it is undisputed that the DOH failed to attend a scheduled meeting with concerned citizens to discuss these treacherous road conditions, which meeting was scheduled to be held *before* the occurrence of the fatal accident at issue herein. In the course of scheduling this missed meeting, the DOH was informed of the first fatal accident, which resulted in one person's death, and thus had been put on notice of the dangerousness of the subject bridge and roadway and its corresponding duties to inspect and to keep safe this specific portion of public highway. *After* this missed meeting, the Estates' decedents were killed when they were involved in a subsequent fatal accident on the same bridge and accompanying roadway; this second fatal accident claimed the lives of two victims.

Despite this clear violation of the DOH's statutory duties to keep safe the public highways of this State and to inspect the same, the majority has determined that the victims' families have no remedy in this case because insurance coverage for their claims is precluded by Endorsement Number 7 of the State's policy of insurance. I respectfully disagree. Where, as here, a claim is made against the State's insurance coverage, this Court repeatedly has held that a finding of liability, not immunity, is favored. "The general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail." Syl. pt. 2, *Marlin v. Bill Rich Constr., Inc.,* 198 W.Va. 635, 482 S.E.2d 620 (1996). *Accord* Syl. pt. 3, *Zirkle v. Elkins Road Pub. Serv. Dist.,* 221 W.Va. 409, 655 S.E.2d 155 (2007) (per curiam); Syl. pt. 2, *Smith v. Burdette,* 211 W.Va. 477, 566 S.E.2d 614 (2002); Syl. pt. 5, *Russell v. Bush & Burchett, Inc.,* 210 W.Va. 699, 559 S.E.2d 36 (2001); Syl. pt. 1, *Zelenka v. City of Weirton,* 208 W.Va. 243, 539 S.E.2d 750 (2000); Syl. pt. 2, *Reed v. Bord,* 206 W.Va. 568, 526 S.E.2d 534 (1999) (per curiam); Syl. pt. 2, *Calabrese v. City of Charleston,* 204 W.Va. 650, 515 S.E.2d 814 (1999); Syl. pt. 1, *Brooks v. City of Weirton,* 202 W.Va. 246, 503 S.E.2d 814 (1998). This Court has recognized this constructive rule favoring liability because the Legislature has determined insurance coverage for the State's agencies to be necessary to ensure that persons injured through the State's negligence are compensated for their injuries. *See* W. Va.Code § 29–12–1 (1957) (Repl. Vol. 2004) (recognizing need for state insurance); W. Va.Code § 29–12–5(a)(2) (2006) (Supp. 2008) (authorizing Board of Risk and Insurance Management to procure state insurance). *See also Russell v. Bush & Burchett, Inc.,* 210 W.Va. at 706, 559 S.E.2d at 43 ("*W. Va.Code,* 29–12–1 [1994] evidences a remedial legislative purpose that the State establish mechanisms that will assure that the State is financially responsible and accountable for injuries occasioned by culpable State action.").

When interpreting an exclusion contained in a policy of insurance, such as Endorsement Number 7 at issue herein, the language is construed strictly and against the insurer. "Where the policy language involved is exclusionary, it will be strictly construed against

---

**3.** W. Va.Code § 17–2A–8(36).

**4.** W. Va.Code § 17–2A–8(3).

**5.** *Id.*

the insurer in order that the purpose of providing indemnity not be defeated." Syl. pt. 5, *National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. United States Fid. & Guar. Co.,* 202 W.Va. 308, 504 S.E.2d 135 (1998). When such language is plain, the policy language is applied as it is written. Syl. pt. 2, *Louk v. Isuzu Motors, Inc.,* 198 W.Va. 250, 479 S.E.2d 911 (1996) (" ' "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.*[ *of America* ], 153 W.Va. 813, 172 S.E.2d 714 (1970).' Syllabus point 1, *Russell v. State Automobile Mutual Insurance Company,* 188 W.Va. 81, 422 S.E.2d 803 (1992).").

Here, the decedents' Estates have made claims against the State's policy of insurance for injuries they sustained by virtue of the DOH's failure to keep safe and to inspect the bridge and corresponding roadway upon which the fatal accident occurred. Under the plain language of the State's insurance policy, coverage is provided for "any actual or alleged act, *breach of duty, neglect, . . . or omission by the 'insured(s)'* [6] *in the performance of their dut*[*ies.*]" (Emphasis and footnote added). While Endorsement Number 7 details numerous actions, or inactions, of the State that are specifically excluded from coverage, it does not reference either

the State's failure to keep safe or to inspect the State's public highways. Absent the specific inclusion of such language in this Endorsement, the exclusionary language does not apply, and coverage is provided for the victims' injuries. *See State ex rel. Baker v. Bolyard,* 221 W.Va. 713, 719, 656 S.E.2d 464, 470 (2007) (Starcher, J., dissenting). (" '[*I*]*nclusio unius est exclusio alterius* ' ('the inclusion of one is the exclusion of others')[.]" (footnote and citation omitted)). In short, the majority's contrary interpretation and application of this exclusion is wrong.

Therefore, in light of the blatant dereliction of the DOH's clear statutory duties in this case; the majority's decision which not only fails to hold the DOH accountable for its actions and inactions but effectively absolves the DOH of any responsibility for the tragic, fatal accident that unnecessarily and untimely claimed the lives of the Estates' decedents; and the simple fact that the subject policy of insurance clearly provides coverage for the Estates' claims alleging that the DOH neglected to fulfill its obligations to keep safe and to inspect the public highways of this State, I respectfully dissent.

---

6. The DOH is an insured under the State's policy    of insurance.