687 S.E.2d 346

**Keith WEST and Susan West, Plaintiffs Below, Appellees**

**v.**

**The WEST VIRGINIA DEPARTMENT OF TRANSPORTATION, DIVISION OF HIGHWAYS, a department or agency of the State of West Virginia; and Paul A. Mattox, in his capacity as the Commissioner of Highways, Defendants Below, Appellants.**

**No. 34749.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 2009.

Decided Nov. 18, 2009.

Concurring and Dissenting Opinion of Justice Davis
Nov. 18, 2009.

Charles L. Woody, Spilman, Thomas & Battle, Charleston, WV, for Appellant.

Jason A. Cuomo, Frank Cuomo, Jr., Cuomo & Cuomo, Wellsburg, WV, for Appellee.

PER CURIAM:

This appeal is brought by the defendants below,[1] the West Virginia Department of Transportation, Division of Highways, and Paul A. Mattox in his capacity as Commissioner of Highways (hereinafter collectively referred to as "DoH") from the judgment entered March 19, 2008, by the Circuit Court of Brooke County after a trial by jury resulting in a verdict in favor of plaintiffs below, Keith West and Susan West, (hereinafter jointly referred to as "Wests") in an amount of over $8 million.[2] Although DoH raises numerous questions in this appeal, the dispositive issue is whether the applicable State liability insurance policy provides coverage under the circumstances presented in this case. Based upon our consideration of the issues raised in the briefs and oral arguments in light of the relevant documents and legal precedents, we reverse the judgment of the lower court and remand the case for further proceedings in order to determine the threshold issue of whether a properly executed State liability insurance policy was in place at the time the West accident occurred.

## I. Factual and Procedural Background

The case on which this appeal is based was filed by the Wests following a motor vehicle accident on January 20, 2005. Mr. West was a passenger in a truck his father was driving on Route 7, near Morgantown, West Virginia. There was slush on the road and the father lost control of the vehicle while entering a sharp curve. Although he regained control of the vehicle, the father was unable to bring the truck to a stop and steered the vehicle between a guardrail and telephone pole believing that the truck would come to rest in a meadow. Unfortunately, what the father conceived to be a meadow was actually a hillside. The truck rolled over while proceeding down the hill. The father was not injured, but Mr. West was ejected from the vehicle and sustained fractures to an upper arm and hip socket. No DoH employees were present at the site when the West accident occurred.

The subject guardrail had been damaged during a previous accident, which by all accounts occurred on February 1, 2004. A shortening of the guardrail resulted from this prior incident due to the impact causing the guardrail to buckle and bend backward toward itself. DoH maintains it requested Penn Line to repair the guardrail on November 8, 2004, but the repair did not occur until February 7, 2005, or eighteen days after Mr. West was injured at the site.

On April 19, 2006, the Wests filed suit against DoH and Penn Line, the company which eventually repaired the guardrail in question through its contract with DoH. The negligence claims the Wests levied against DoH involved negligent selection of Penn Line as a contractor, and failure to post a warning at the site of the damaged guardrail. The Wests' complaint also alleged that Penn Line was negligent in failing to install, repair, erect and/or replace the damaged section of guardrail, and for not engaging another entity to complete the repair in a more timely manner.

With regard to the State's liability insurance policy, the complaint asserted that the Wests were seeking recovery from DoH pursuant to the State's National Union Fire Insurance Company policy number RMGL 480–62–96 "under and up to the limit of said liability insurance coverage." The complaint goes on to state: "In the event that the defendants DoH and Mattox invoke the exclusion contained under 'Endorsement # 7' [of the State liability insurance policy], plaintiffs seek a determination by the Court, and for the Court to enter a declaratory judgment, declaring that the same is null and void as being[ ] vague, ambiguous, unconscionable and against public policy."[3]

---

1. Penn Line Service, Inc. (hereinafter "Penn Line") was originally named as another defendant in the complaint, but the claims against the company were dismissed as part of a settlement agreement.

2. The order from which appeal is taken is dated June 24, 2008, which reflects *inter alia* the trial court's denial of DoH's motions for entry of a judgment as a matter of law and a new trial.

3. The public policy argument is not related to the appealed trial court rulings before us. However, we decided most recently in syllabus point six of *Wrenn v. West Virginia Department of Transportation*, 224 W.Va. 424, 686 S.E.2d 75 (2009), that

In Penn Line's answer to the complaint, it raised a cross-claim against DoH seeking indemnification. In answer to Penn Line's cross-claim, DoH invoked immunity pursuant to Article VI, Section 35 of the West Virginia Constitution, and sought indemnification against Penn Line should DoH nonetheless be found liable based on the acts or omissions of Penn Line.

Penn Line also filed a third-party complaint against the driver of the truck which the driver countered with a motion to dismiss. The trial court signed an agreed order on May 4, 2007, dismissing the third-party complaint against the driver with prejudice "based on the good faith settlement heretofore entered into between plaintiffs and . . . [the father]."

On February 4, 2008, Penn Line filed a "Motion for Summary Judgment for Affirmative Finding of Insurance Coverage." Four days later the Wests filed a "Motion for Summary Judgment on Declaratory Judgment Action" regarding coverage under the State's liability insurance policy. Arguments were heard on these motions on February 20, 2008; the lower court's rulings on the motions appeared in an order signed on February 26, 2008. The order conveys the trial court's initial finding that a declaratory judgment action was the proper course to decide the controversies. Thereafter, the order reflects the circuit court's conclusion that the policy issued by the National Union Fire Insurance Company was in place during the time of the accident and that the policy, without modification by endorsement, provided coverage for the accident. The lower court specifically found that Endorsement No. 7, delineating circumstances in which coverage is excluded,[4] was not part of the insurance contract because it was not signed. Finding that the lack of signature created an inherent ambiguity as to whether the insurance contract was modified by the provisions of Endorsement No. 7, the lower court concluded that the ambiguity had to be strictly construed against the insurance company in favor of providing coverage. The order further reflects the lower court's finding that even if the terms of Endorsement No. 7 were applicable, DoH had a duty to inspect guardrails and inspection was not an activity specifically excluded from coverage by the terms of Endorsement No. 7. Based upon these findings, the lower court granted both the Wests' motion for summary judgment on the declaratory judgment action and Penn Line's motion for summary judgment for an affirmative finding of insurance coverage. However, the lower court denied Penn Line's motion for summary judgment with respect to liability because the court concluded that issues of material fact remained in dispute.

On February 27, 2008, the trial court entered an order captioned "Stipulation and Agreed Order of of [sic] Dismissal of Defendant Penn Line Service, Inc." As related in this order, the Wests' claims against Penn Line were dismissed with prejudice due to a settlement between the parties. The order also reflects that the dismissal with prejudice included "all cross-claims filed against Penn

upon consideration of "the breadth of the Division of Highway's 'primary functions,' and the expense that would be incurred by providing insurance coverage for every function, . . . the exclusions contained in Endorsement No. 7 to the State's liability insurance policy . . . do[ ] not violate the laws and public policy of West Virginia."

4. The text of Endorsement No. 7 to Policy No. RMGL 480-62-96 reads as follows:

It is agreed that the insurance afforded under this policy does not apply to any claim resulting from the ownership, design, selection, installation, maintenance, location, supervision, operation, construction, use, or control of streets (including sidewalks, highways or other public thoroughfares), bridges, tunnels, dams, culverts, storm or sanitary sewers, rights-of way, signs, warnings, markers, markings, guardrails, fences, or related or similar activities or things but it is agreed that the insurance afforded under this policy does apply (1) to claims of "**bodily injury**" or "**property damage**" which both directly result from and occur while employees of the State of West Virginia are physically present at the site of the incident at which the "**bodily injury**" or "**property damage**" occurred performing construction, maintenance, repair, or cleaning (but excluding inspection of work being performed or materials being used by others) and (2) to claims of "**bodily injury**" or "**property damage**" which arise out of the maintenance or use of sidewalks which abut buildings covered by the policy.

Emphasis in original.

Line by defendant West Virginia Department of Transportation, Division of Highways, for any indemnification and/or contribution."

The jury trial began on March 4, 2008, and concluded on March 7, 2008. DoH claims that the trial court made various flawed rulings before and during the trial which left the agency virtually defenseless,[5] and it was because of these errors that the jury returned a verdict in favor of the Wests for over $8 million.[6]

DoH thereafter filed motions for a new trial, entry of judgment as a matter of law and entry of an order modifying or altering judgment. By order dated June 24, 2008, the lower court denied the post-trial motions for judgment as a matter of law or a new trial. The order further reflects that a ruling on the motion to modify judgment was deferred. Rather than remitting the judgment by the amount which exceeded the $1 million limit of the State liability insurance policy as requested in DoH's motion to modify, the lower court ordered discovery "to determine the full extent of insurance which may apply to the payment of any and/or all of the Judgment in this case."[7] The matter regarding other sources of insurance proceeds is pending before the lower court.

DoH filed its petition for appeal with this Court on January 23, 2009, with review being granted by order dated March 12, 2009.

## II. Standard of Review

This case is before us from an order denying a renewed motion for entry of a judgment as a matter of law and a motion for a new trial.[8] The standards we follow in conducting our review of such matters is settled. This Court recently held that "[t]he appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo*." Syl. Pt. 1, *Fredeking v. Tyler*, 224 W.Va. 1, 680 S.E.2d 16 (2009). As for our review of rulings on motions for new trials, we explained in syllabus point four of *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976), that "[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence."

## III. Discussion

DoH raises numerous issues in this appeal which fall within three general categories: (1) whether DoH's constitutional immunity from suit is excepted under the facts of the West accident because the claims are covered under the terms of a State liability insurance policy, (2) whether satisfaction of the judgment against DoH is limited to proceeds from any applicable State liability insurance policy; and (3) whether the trial court committed reversible error (a) by finding as a matter of law that DoH was negligent, (b) by excluding the driver of the vehicle from the verdict form, (c) by not allowing evidence that Mr. West was not wearing a seatbelt when the accident occurred, and (d) by not informing the jury of a settlement reached

---

5. The particular trial court decisions to which DoH assigns error include: not allowing evidence that Mr. West was not wearing a seatbelt for impeachment purposes; excluding the driver of the vehicle from the verdict form; failing to inform the jury of Penn Line's settlement; and finding DoH negligent as a matter of law.

6. The verdict for Mr. West was $7,030,298.33, which included past and future medical damages and future diminished earnings; the verdict for Mrs. West was $1 million for loss of consortium.

7. It is our understanding that the potential source of other insurance proceeds involves liability policies Penn Line maintained in relation to its contract with DoH. It is unclear what issue

would remain to discuss in this regard since Penn Line was dismissed as party and all indemnification or contribution claims DoH had against Penn Line were likewise dismissed. In any event, this concern is not material to the matter now before us.

8. DoH assigns error to the lower court's not granting the agency's motion to alter or amend the judgment to the limit of the State's liability insurance policy, however, the lower court has deferred ruling on that motion in that it relates to other potential insurance proceeds. *See* n. 7, *supra.* As such, the question is not ripe for appellate consideration. Syl. Pt. 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958).

with another defendant during the course of the trial. For the reasons detailed below, only the first issue needs to be considered in order to dispose of this appeal.

■ DoH focusing on the language of Endorsement No. 7 maintains that the lower court was incorrect in deciding the threshold question of whether the applicable State liability insurance policy extended coverage for injuries resulting from the West accident. If the claims are not covered by the policy, DoH maintains it is immune from suit pursuant to Article VI, § 35 of the West Virginia Constitution.[9] Indeed, as we most recently observed in *Wrenn v. West Virginia Department of Transportation,* "the State is still constitutionally immune from claims arising out of any activity or responsibility that is not covered under ... [any insurance] policy [purchased or contracted for by the Board of Risk and Insurance Management (BRIM) ]. W.Va.Code § 29–12–5(a)(4)." 686 S.E.2d at 79.

■ Hence, we turn our focus to the State liability policy purportedly in effect at the time of the accident in light of the lower court's determinations. As earlier noted in this opinion, the lower court found that National Union Fire Insurance Company policy RMGL 480–62–96 was in effect at the time the West accident occurred in January 2005, and provided coverage for the accident if no endorsement would otherwise alter its terms. DoH argued below as it does here that Endorsement No. 7 to the policy provides such modification because no DoH employees were present at the scene when the accident occurred. However, the court below concluded that the exclusionary language of Endorsement No. 7 was inapplicable to the situation at hand for two reasons: (1) the signature line on the certified copy of Endorsement No. 7 examined by the lower court was not signed; and (2) even if Endorsement No. 7 had been signed, inspection is not specified among the exclusionary acts listed in the endorsement.[10] The precise ruling of the trial court with regard to the availability of State insurance to cover this accident appears in the trial court's February 26, 2008, order as follows:

> It is undisputed, and the Court **FINDS and CONCLUDES** that policy RMGL 480–62–96 issued by the National Union Fire Insurance Company was in place for the period covering July 1, 2004, to July 1, 2005. This policy was in place at the time the West accident occurred in January 2005. The Court further **FINDS and CONCLUDES** that the policy's Comprehensive Liability Coverage, if unmodified by any applicable endorsements, clearly provides coverage for the accident at issue.

Emphasis in original. The February 26, 2008, order also indicates that in order to arrive at this decision the lower court relied on a certified copy of the State insurance policy attached as an exhibit to Penn Line's brief in support of its motion for an affirmative finding of State insurance coverage. The referenced exhibit was not physically attached to the copy of the Penn Line brief in the record certified to this Court. Based upon both our need to review the document relied upon by the lower court and the lower court's incorporation of the document into

---

**9.** West Virginia Constitution Art. VI, § 35 states in relevant part: "The State of West Virginia shall never be made defendant in any court of law or equity...."

**10.** Although we do not reach the issues relating to Endorsement No. 7 because this case is being remanded on other grounds, any determination of the lower court upon remand regarding the significance of specific reference to inspection as an excluded activity in Endorsement No. 7 has to be made in light of our recently filed decision in *Wrenn v. West Virginia Department of Transportation.* We concluded in *Wrenn* that inspection is an inherent part of the list of activities excluded from coverage of the State liability insurance policy when DoH employees are not present at

the time an accident occurs. 686 S.E.2d at 81. This conclusion was reached by reasoning that

> [t]he State ... cannot reasonably be expected to list [in Endorsement No. 7] every different duty or task that might conceivably be necessary to further road, bridge or right-of-way maintenance, or that might be appropriate only because the DOH owns, supervises, or controls a system of roads bridges and rights-of-way.... Such a holding would merely encourage imaginatively-named claims by creative attorneys as a means to circumvent application of the exclusionary language in every case.

*Id.* The consequences of Endorsement No. 7 being unsigned was not before the Court in *Wrenn.*

the record by reference in the February 26, 2008, order, we instructed the Clerk of this Court to obtain a copy of the document.[11]

Review of the policy relied upon by the lower court disclosed that not only was Endorsement No. 7 of the policy unsigned, but no signature appeared on any part of the policy, including the declarations page. The lack of signature on the contract for insurance is legally significant because at the time Policy RMGL 480–62–96 was issued, there was a statutory requirement that all contracts of insurance be signed. W. Va.Code § 33–12–11 (2002).[12]

DoH had indicated in its brief that it would be able to supply a signed copy of the State insurance policy, which we directed the Clerk to obtain. Comparison of the policy relied upon by the lower court and the policy submitted by DoH revealed differences between the documents going beyond the appearance of a signature on the declarations page. Although the policy supplied by DoH was not part of the appellate record and could not be relied upon for any substantive purpose in this appeal,[13] its existence does bring into sharper focus an oversight of the trial court. In light of *Pittsburgh Elevator v. West Virginia Bd. of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983), the fundamental issue that needs to be determined in this case is whether a valid insurance policy exists which would cover the Wests' claims. Under these circumstances, it would be premature for this Court to address any issues regarding the effect Endorsement No. 7 *could* have on the insurance coverage that *may* be available. *See* Syl. Pt. 2, in part, *Harshbarger v. Gainer*, 184 W.Va. 656, 403 S.E.2d 399 (W.Va. 1991) (" 'Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes.' *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W.Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943).").

The February 26, 2008, order simply provides no legal basis for the conclusory ruling that a State liability policy was in place at the time the accident occurred. The order reveals careful examination of the blank signature line on Endorsement No. 7, without mention of the omission of the statutorily required signature on the insurance contract. Based upon the above, we reverse the judgment in this case and remand the matter for further proceedings to address the threshold legal determination of whether a properly executed State insurance policy was in effect at the time the West accident occurred. After making this determination, the trial court should consider what effect, it any, the decision regarding the status of State insurance coverage has on the previously entered judgment relating to Endorsement No. 7 so that an appealable order regarding the same may be entered.

## IV. Conclusion

In keeping with the foregoing, the judgment of the Circuit Court of Brooke County

---

**11.** Despite the steps that were taken in this case, appellate counsel should be reminded and advised that it is their responsibility to assure that all essential documents related to issues raised on appeal are actually in the record submitted with the appeal. Rule 8, W. Va. R.App. P. This Court is under no obligation to determine the existence or locate any portion of a record certified on appeal. It is the duty of counsel and not this Court to fill such voids.

**12.** At the time the State insurance policy in this case was issued, West Virginia Code § 33–12–11 required that:

No contract of insurance covering a subject of insurance, resident, located or to be performed in this state, shall be executed, issued or delivered by any insurer unless the contract or, in the case of an interstate risk, a countersignature endorsement carrying full information as to the West Virginia risk, is signed or countersigned in writing by a licensed resident agent of the insurer, except that excess line insurance shall be countersigned by a duly licensed excess line broker.

2002 W.Va. Acts ch. 180.

The signature requirement was eliminated for insurance policies issued after December 31, 2004, by the following proviso inserted into the statute that same year:

Provided, That the countersignature requirements of this section shall no longer be required for any contract of insurance executed, issued or delivered on or after the thirty-first day of December, two thousand four.

W.Va.Code § 33–12–11 (2004) (Repl. Vol. 2006).

**13.** Syl. Pt. 4, *Morrison v. Smith–Pocahontas Coal Co.*, 88 W.Va. 158, 106 S.E. 448 (1921) ("A question not fairly presented or arising upon the record, though made a point of error in this [supreme] court, will not be considered or regarded as ground for reversal.").

is hereby reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

Justice DAVIS concurs in part and dissents in part and reserves the right to file a concurring and/or dissenting opinion(s).

DAVIS, J., concurring, in part, and dissenting, in part:

I concur with the majority's decision to reverse the circuit court's rulings regarding the validity of the State's policy of insurance in this case and to remand this matter to determine whether, in fact, said policy complies with the statutory signature requirements set forth in W. Va.Code § 33–12–11 (2002) (Repl. Vol. 2003).

However, I dissent and write separately to reiterate my objections to the majority's interpretation of Endorsement Number 7 in *Wrenn v. West Virginia Department of Transportation, Division of Highways*, 224 W.Va. 424, 686 S.E.2d 75 (2009), and the application of that decision to the facts of the case *sub judice*. Although the majority opinion does not resolve the issues related to Endorsement Number 7 presented in the instant appeal, the opinion alludes to this Court's recent decision in *Wrenn* and suggests that, if the policy is determined to be valid and the construction of Endorsement Number 7 is again placed in issue, the question of whether the Division of Highways's failure to inspect the public highway at issue herein should be resolved in accordance with *Wrenn*. *See* Majority Op., 224 W.Va. at 568 n. 10, 687 S.E.2d at 351 n. 10. I disagreed with the majority's construction of Endorsement Number 7 as precluding coverage for the DOH's failure to inspect in *Wrenn*, and, to the extent this erroneous construction could be applied to the facts of the case *sub judice*, I reiterate my objections.

Accordingly, I respectfully concur, in part, and dissent, in part.